## STEELE *vs.* WYATT'S ADM'R.

1. The Orphans' Court having granted an order of sale of "all the *perishable* property" belonging to an estate, the administrator proceeded under it to sell all the *personal* property, including the negroes, and made due return of the sale to the court, which was received and ordered to be recorded; and the administrator *de bonis non* afterwards brought detinue for one of the negroes sold : *Held,* that in the absence of a statutory definition of the term "*perishable* property," as applied to the estates of decedents, the order should receive the same interpretation given to it by the court that made it and the parties acting under it, and that the sale passed the legal title to the slaves.

APPEAL from the Circuit Court of Lowndes.

Tried before the Hon. ANDREW B. MOORE.

DETINUE by the appellee, who is the administrator *de bonis non* of Peter Wyatt, deceased, for a slave named Jeff. The pleas were, the general issue and the statute of limitations. Verdict and judgment for the plaintiff below.

On the trial a bill of exceptions was allowed, by which it appears that Peter Wyatt died in Lowndes County, in 1833, in possession of the slave in question, and owned him ; that Mary Ann E. Wyatt, his widow and relict, with one William N. Mock, her brother, administered on the estate, and continued in said administration up to March, 1852, when they were removed from said trust, and the plaintiff below was appointed adminis-trator *de bonis non* of said estate.

The defendant thereupon proved that said administrator and administratrix in chief obtained from the Orphans' Court of Lowndes County the following orders, to-wit :

"Ordered by the court that the administrators of the estate of Peter Wyatt, deceased, have leave to sell all the perishable property of said deceased, upon a credit of at least six months.

"Ordered by the court that the administrators do make a full and true inventory of said sale, and return the same to this court the first term thereafter.

"Ordered by the court that said administrators give a notice of said sale, by advertising at three or more public places in said county, at least thirty days previous thereto, of the time and place of said sale.

"Ordered by the court that the administrators of the estate of Peter Wyatt, deceased, have leave to sell this present crop of cotton, at public or private sale, as they may deem most advantageous to said estate of said deceased."

"The defendant further proved that on the     day of February, 1834, said administrator and administratrix, after having duly advertised the sale of the personal property of said Peter Wyatt, did sell, at the late residence of the said Peter, to the highest and best bidder, all the personal property belonging to said estate, including the slaves, the boy in controversy with the rest ; that there were a great many persons present, the property cried and brought full prices.    The property was sold

on a credit until the 1st of January, 1835. When the property was put up, the terms of sale were proclaimed, and the boy in question was bid off by Mrs. Wyatt, the administratrix.

"The defendant further proved that, soon after the sale of said property, to-wit: on     day of March, A. D. 1834, the said administrator and administratrix made out and returned to said Orphans' Court a sworn sale bill of all of said personal property, which sale bill included an account of the sale of Jeff and all the other slaves of Peter Wyatt; also an account of the sale of the cotton; said sale bill also contained an account of the prices at which the various articles and pieces of property were sold, and who were their respective purchasers. Said sale bill being reported to the Orphans' Court aforesaid, at its March term, 1834, the following orders were made at that term on the minutes of said court : 'Now, at this term of the court, Wm. N. Mock, one of the administrators of the estate of Peter Wyatt, deceased, came into court, and made a return of a sale bill of the property of said deceased ; whereupon it is ordered by the court that the clerk enter upon record the sale bill in the inventory book kept for that purpose; it is further ordered by the court that the clerk file in his office the original sale bill as an office document.'

"The defendant introduced proof tending to show that soon after the said sale said Jeff went out of the possession of Mrs. Wyatt into the possession of a person to whom Peter Wyatt was indebted, and ever afterwards continued in the possession of that person and those claiming under him, up to the time of this trial, a period of eighteen or nineteen years. The record of the administration of the said Wm. N. Mock and Mrs. Wyatt, being produced, showed no act of theirs after the proceedings of said March term, 1834, above copied ; they never made any settlement of their administration."

The court charged the jury as follows :

1. That the orders above copied conferred no authority on the administrators in chief to sell the slaves, and that such sale was void ;

2. That the orders above copied, confirming the sale of the slaves, did not legalize the sale ;

3. That said sale being made by the administrators in chief,

they were estopped from suing for and recovering the slaves, and the statute of limitations did not begin to run until the appointment of the administrator *de bonis non* of the estate ;

4. That, even if the jury should find that the slave Jeff was sold publicly under said orders ; that the sale was fair and for a full price, and said slave was applied to the payment of a debt of the estate of said Peter Wyatt, that does not defeat the plaintiff's right of action, unless those who are interested in the estate elect so to regard it.

To all of these charges the defendant excepted, and asked the court to charge the jury:

1. That, if they believed all the evidence, then the plaintiff cannot recover; which charge the court refused to give, and the defendant excepted.

2. That, if they found from the evidence that said slave was sold publicly to the highest bidder, on a credit from February, 1834, till the 1st of January, 1835, under the orders above copied, that the sale was fair and for a fair price, that the sale was reported to the Orphans' Court, and the orders above copied were then and there passed by the Orphans' Court, and that said slave ever afterwards remained out of the possession of the administrators, then the right of the slave is divested out of said estate, and the plaintiff cannot recover. This charge the court refused, and the defendant excepted.

The charges given and the refusal to charge as requested are now assigned for error.

WATTS, JUDGE & JACKSON and GEO. W. STONE, for appellants.

T. WILLIAMS, *contra.*

GIBBONS, J.—The first charge of the court to the jury was, that the several orders above set out did not confer upon the administrators in chief authority to sell the slaves, and that such sale was void ; meaning, we presume, that such sale was void as against the plaintiff in the action, for as against the administrators in chief it was not void, as is shown in a subsequent charge of the court, where it states that the administrators in chief would be estopped by their sale from asserting a title in their names. Giving to the charge this interpretation,

the question is, whether the court was or was not correct in its charge.

The sale seems to have taken place in February, 1834 ; and the act under which the orders were made is as follows, to-wit : "It shall not be lawful for any executor or executors, adminis-trator or administrators, guardian or guardians, to take the estate, or any part thereof, of any testator or intestate, at the appraised value, or to dispose of the same at private sale, except where the same is directed by the will of the testator.— But in all cases where it may be necessary to sell the whole, or any part, of the personal estate of any testator or intestate, it shall be the duty of the executor, administrator or guardian, to apply to the Orphans' Court of their county for an order of sale, and obtaining the same, to advertise the time and place of such sale in three or more public places in the county, at least thirty days previous to the day of sale, and then and there proceed to sell the same at public sale to the highest bidder, giving at least six months credit ; the purchaser giving bond with approved security."— Clay's Dig. 223 § 13. We say the order of sale was made under this act, because this is the only act upon the subject under which it could have been made.

The term "perishable property," in its most enlarged sense, would mean all personal, as distinguished from real property ; whilst in its most restricted sense, it would only mean such personal property as had in itself the elements of destruction or decomposition, as for instance, fruits, or such productions from the labor and skill of man as are ephemeral in their existence, or evanescent and changeable in their value. In this latter sense, it would ordinarily comprehend but very few articles belonging to an estate. If we apply to the orders of the court, on which the charge under discussion is predicated, the most enlarged sense of the term, it is clear that it did confer on the administrators all the authority necessary for the legal disposition of the property. If, on the other hand, we apply to them the most restricted sense, then it is equally clear that the order would not confer such authority. It does not appear from the present record whether there was belonging to the estate, at the time that the orders were made, any property that would properly range itself under the latter of the above definitions of the term perishable property; all that does apppear is, that all the

personal property of the estate was sold, and the negro in question with the other negroes of the estate.

It will be observed here, that in reference to the effects of estates, our statute has given no definition of the term perishable property ; nor is there any act authorizing the Orphans' Court to make any order in reference to that particular species of property. The term, it is true, has received a legislative interpretation in reference to the attachment laws of the State, and it is there said to be that "which is likely to waste, or be destroyed by keeping."—Clay's Digest 56 § 8 ; but whether the legislature would apply the same meaning to the term, when used in reference to the estates of deceased persons, we know not, as it has not as yet thought proper to give it any definition whatever as applied to such estates. The term, then, as employed in the order of the court, could have no reference to any technical meaning given to it as applied to estates in the hands of personal representatives, as the term then had no legislative technical meaning, nor has it any as yet, as applied to such estates. It is clear that, if the statutes had defined what should be considered as perishable property as applied to such estates, or even if the term was known to our law at all in a legislative technical sense, as applied to the general property of decedents, then the term, as used by the court in the order above referred to, would have to receive such statutory interpretation. But in the absence of any such definition, what rules of interpretation shall we resort to in order to ascertain the meaning of the term as used by the court, or to comprehend in what sense the court making the order, and the parties acting under it, understood it? I confess I know of no better rule under such circumstances than to let the parties themselves be the interpreters, by showing what they themselves understood by it. The moment we adopt this means of ascertaining the meaning of the orders, there is no longer any mystery. We find that under the order the administrators proceeded and sold the whole of the personal property of the estate, precisely as if the order had been to sell the personal instead of perishable property.

The order, on its face, was in all respects as if it was intended to mean the personal property generally, and to be strictly a statutory order. The only word in the whole order that prevents it from being strictly such, is that *perishable* is used in-

stead of *personal* as a prefix to the word property. The sale is made, and an account thereof returned to the court, according to the order ; and the account passed, and the proceedings of the administrators sanctioned and approved, as much as it was in the power of the court so to do, precisely as if the order had been to sell the personal instead of the perishable property.— Under these circumstances, we think we are authorized to say, that such was the meaning of the order under which the sale was made. That such was the understanding of the parties acting under the order, and of the court itself making it, we think clear ; and in the absence of a statutory definition of the term perishable property, as applied to the estates of decedents, by which the term has to receive a strict statutory technical meaning, we see no reason why we should not give to the order now the same interpretation that the court making it and the parties acting under it gave it at the time that it was made.— From this view it follows, that the court erred in this charge as given to the jury, as the orders of the court under which the sale was made were ample to confer upon the administrators in chief the authority to sell the property and pass the legal title thereto. This we regard as decisive of the whole case, and therefore do not deem it necessary to consider the remaining questions raised by the record.

The judgment of the court below is reversed, and the cause remanded.