## WYATT'S ADM'R *vs.* STEELE.

1. A motion to exclude evidence, a part of which is legal, may be overruled, since the court is not authorized to reject that portion which is proper, nor required to sift the evidence so as to separate the legal from the illegal.

2. The construction of an order of sale, made by the orphans' court, is a question for the court, and not for the jury, and must be determined from an inspection of the record alone, without the aid of evidence *aliunde* to show its meaning : similar orders, made by the same judge in other cases, are *res inter alios actæ*.

3. The opinion previously pronounced in this cause (23 Ala. R. 764), construing the order of sale of "*perishable property*" as authorizing a sale of slaves, must stand as the law of the case, when remanded to the primary court for another trial, and when brought up again on appeal.

4. If an administrator sells slaves under an order of sale of "the perishable property" of his intestate's estate, the validity of the sale, if it was conducted publicly and according to law, is not affected by his opinion or belief that the order did not authorize him to sell the slaves.

5. If the court, after deciding a question of law against the plaintiff, refuses to instruct the jury, on his request, that they have nothing to do with the decision of that question—thereby implicdly admitting their right to revise its decision—the refusal of the charge gives the plaintiff an additional chance for a verdict, and is, therefore, no cause of reversal in his favor.

6. When the jurisdiction of a court depends upon its ascertainment of a preliminary fact, the exercise of jurisdiction implies the previous ascertainment of the jurisdictional fact, and its decision as to that fact cannot be collaterally called in question ; and therefore, where an order of sale is made by the orphans' court, the necessity for the order, being a jurisdictional fact, must be considered as having been made apparent to the court, and cannot be inquired into in a collateral proceeding.

Appeal from the Circuit Court of Lowndes.

Tried before the Hon. John Gill Shorter.

Detinue for a slave named Jeff, by Thomas M. Williams, administrator *de bonis non* of Peter Wyatt, deceased, against David A. Steele ; pleas, *non detinet,* and the statute of limitations of six years. On the first trial, the plaintiff had judgment in his favor ; but the judgment was reversed on error, and the cause remanded for another trial.—See 23 Ala. 764.

The bill of exceptions in the present record shows these facts:

The plaintiff proved that the slave sued for was the property of the said Peter Wyatt, deceased, both before and at the time of his death, and also the value of the slave and of his hire ; and then offered in evidence a transcript from the records of the Orphans' Court of Lowndes county, showing the appointment of Mrs. Mary Ann E. Wyatt and Wm N. Mock as administrator and administratrix of said decedent's estate in November, 1853, and containing the following orders, made on the same day :

" Ordered by the court, that the administrators of the estate of Peter Wyatt, deceased, have leave to sell all the perishable property of said deceased, upon a credit of at least six months.

" Ordered by the court, that said administrators do make a

true and full inventory of said sale, and return the same to this court the first term thereafter.

"Ordered by the court, that said administrators give a notice of said sale, by advertising at three or more public places in said county, at least thirty days previous thereto, of the time and place of said sale.

"Ordered by the court, that said administrators have leave to sell the present crop of cotton, at public or private sale, as they may deem most advantageous to said estate.

"Ordered by the court, that said administrators do make a full and true return of the proceeds of said sale to this court, at the first term thereafter."

The transcript showed, also, that said administrators at the February term, 1834, returned an inventory to said court, of their proceedings under said order of sale ; "whereupon it was ordered by the court, that the clerk enter said appraise bill upon the record, in the inventory book kept for that purpose ; ordered further, that the clerk file said original appraise bill in his office as an office document." This inventory shows that eleven slaves were sold by said administrators, one of whom was the boy Jeff.

"Plaintiff then introduced Mrs. Judith Mock as a witness, who testified as follows : That said William N. Mock and Mrs. Wyatt were her children ; that William Mock left the State many years since, and that Mrs. Wyatt had married one Armstrong, and had left the State many years ago, carrying with her one of the slaves she had purchased; that on the morning of the sale, and previous thereto, William Mock and Mrs. Wyatt, and one Allen who was their surety on their administration bond, talked in her presence about their right to sell the negroes ; that it was said, the order only covered the perishable property, and the negroes were not advertised,—that they would have to go to Hayneville to get an advertisement, and it would delay time, and that they finally concluded it would make no difference. This conversation was objected to by the defendant, but received by the court, subject to the decision on the final charge. Plaintiff then offered to produce the book of records of said Orphans' Court, containing the orders made by the same judge of the various estates coming under his control ; which book contained orders to

sell perishable property, identical with the orders contained in said transcript, and made on the same day of granting letters of administration, and also showed that, in the same estates in which orders had been made to sell perishable property, orders were subsequently made to sell personal property, and that these orders were made both before, about the time, and after said orders were made in said transcript. This book showed that these orders were numerous and uniform, and was offered as evidence to show the practice of said judge in relation to this matter ; the said judge being dead. This evidence was objected to, and the objection sustained by the court ; and to this the plaintiff excepted.

"Plaintiff then proved, that said negro .Jeff was purchased by Mrs. Wyatt, the administratrix, and that he afterwards passed into defendant's possession ; and then closed his case.

"Defendant then introduced Mr. Mealing as a witness, who testified, that he knew the negro Jeff ; that he had been held and claimed by one Benjamin Mock, for fifteen or sixteen years previous to his death; and that the defendant held and claimed him as administrator of said Benjamin Mock, and trustee. Defendant offered to prove by his witness, in order to rebut unfairness in the sale, and that it was made without advertisement, that said William N Mock, the administrator, prior to the sale, told him that he was going to sell the negroes of the estate, and that he had advertised them for sale. and requested witness to attend the sale and purchase. This evidence was objected to by the plaintiff, on the ground of illegality in giving in evidence the declarations of the administrator in chief ; but the objection was overruled, and the witness allowed to testify, and plaintiff excepted.

"Defendant offered to prove by this witness, also, that a great many persons were present at the sale ; that he was there, and wanted to purchase, and bid for the negroes, but did not purchase because the negroes sold for more than he thought they were worth, and at public outcry to the highest bidder. To this evidence plaintiff objected on the ground of irrelevance ; but the court overruled the objection, and allowed the witness to testify, and plaintiff excepted.

"Defendant then introduced one Edwards as a witness, by whom he offered to prove said William N. Mock's declarations

that he intended to sell the negroes, and requesting said Edwards to attend the sale and buy ; and that Edwards did so, and purchased one for $680. Plaintiff objected to this evidence, as being the declarations of said Mock ; but the objection was overruled, and the witness testified as above, and also that the slaves sold high, and that many persons were present ; to all which the plaintiff excepted.

"The court charged the jury, that the order contained in said transcript, to sell the perishable property of said estate, was, under the opinion and judgment of the Supreme Court delivered in this case, an authority to said administrators in chief to sell the slave in question, and the fact that the administrators had sold under said order, and the further fact that the judge of said Orphans' Court had made the orders shown in said transcript on the return of said sale bill, were the reasons principally assigned by the Supreme Court ;. and that this was binding and conclusive, both on the court below and the jury, and nothing now appeared before them to change this result ; and to this charge the plaintiff excepted.

"The plaintiff asked the court to charge as follows :—

"1. That if the negro now sued for was sold without being advertised, and was purchased by Mrs. Wyatt, the administratrix, by and with the consent and knowledge of Wm. N. Mock, the administrator, such sale and purchase by her was fraudulent and void, and the verdict should be for the plaintiff.

"2. That if the slave was sold without being advertised, and was purchased by Mrs. Wyatt, the administratrix, by and with the consent and approbation of Wm. N. Mock, the administrator, and she gave no note or bond with security for the purchase money, and this was assented to by said Wm. N. Mock, then such sale and purchase was fraudulent and void, and the plaintiff is entitled to recover.

"3. That if the negroes were not advertised thirty days, in three or more public places in the county, according to the requisitions of the statute, prior to the sale, then such sale and purchase by the administratrix would be void.

"4. That if, on the morning of the sale, but prior to the sale, the administrator and administratrix had conversed with one or more persons on the subject of their authority to sell the slaves, and had concluded and said that they had no pow-

er under the order to sell the slaves, and for this reason had not advertised them for sale, and did not apply for another order to sell the slaves because it would be too troublesome and would postpone and delay the sale, and said that "it made no odds, they would sell anyhow",—this is evidence to show, 1st, that the administrators did not understand the order as an authority to sell the slaves, and therefore, 2d, as evidence that they did not sell the slaves under the order ; and if they did not sell under the order, such sale is fraudulent and void, especially in this case, where the administrator herself is the purchaser, and therefore the plaintiff is entitled to recover.

" 5. That the fact that the judge of the Orphans' Court, on the return of the sale bill by the administrator, made the orders for the clerk to record and file it as an office document, is no evidence that he understood the order, to sell the perishable property, to mean all the personal property of the intestate ; unless the jury are satisfied and believe from the evidence before them, that the judge, at the time he made said orders to record and file the sale bill, knew and remembered that, in the order to sell the property made in November, 1833, he had used the word *perishable*, and not *personal*; and therefore the orders made by the judge, to record and file the sale bill, cannot have any influence with the jury in making up their verdict.

" 6. That the understanding of the administrators, of the order to sell perishable property, cannot be taken into consideration by the jury in making up their verdict.

" 7. That the understanding of the judge of the Orphans' Court, of the order to sell perishable property, cannot be taken into consideration by the jury in making up their verdict.

" 8. That the judge of the Orphans' Court has no power to order a sale of the personal property of a testator's or intestestate's estate, unless it appears to be necessary.

" 9. That the law requires the personal estate of intestates to be partitioned, unless it becomes necessary to sell.

" 10. That if no debts were due and owing by the intestate, and no other necessity existed for the sale of the slaves, then the order to sell the perishable property, made on the same day on which the administration was granted, would not authorize the administrators to sell the slaves, and as such their verdict should be for the plaintiff.

"The court gave the first three charges; reminding the jury of Wm. Mock's declarations as to advertising the slaves, which evidence or declarations had been previously excepted to as illegal. All the other charges asked by plaintiff, as above set forth, were refused, and to each refusal plaintiff excepted."

The rulings of the court on the evidence, the charge given, and the refusals to charge as asked, are assigned for error.

THOS. WILLIAMS, for the appellant :

1. The judge of the Orphans' Court has no power, as judge, to order a sale of the personal estate of a testator or intestate, but can only do so in cases where it "appears to be necessary."—Clay's Digest, p. 223, § 13; Steele v. Knox, 10 Ala. 614. The law contemplates a partition, where the estate is solvent, and requires this to be done.—Steele v. Knox, *supra*; 1 Iredell's Law R. 259.

2. The order of the court, to sell the "perishable property" of the estate, did not authorize the administrator in chief to sell the slaves. The order was made on the same day the letters of administration were granted, and before the court could know that it was necessary to sell the slaves, either for the payment of debts, or for distribution. The term "perishable," as used in the order, cannot be construed to embrace slaves, whether taken in its general acceptation (Steele v. Knox, *supra*), or in its legal meaning.—3 Munf. 288; 2 N. H. 87; McMul. Eq. R. 459 ; Seargent on Attachment, p. 18 ; Conkling's Admiralty Practice, pp. 485, 507. For the legislative interpretation of the term, see Clay's Digest, p. 54, §§ 1, 2, 6 ; p. 56, §§ 7, 8 ; p. 58, § 14 ; p. 60, § 29 ; p. 61, § 33; p. 202, §§ 7, 8 ; p. 216, §§ 75, 78. Nor could any order made by the judge of the court aid the matter of sale, because, 1st, the court had no power to confirm or vacate the sale ; and, 2d, because, if the sale was void for want of authority, no subsequent order could make it valid.

3. The sale of the slaves was void, as against all having an interest in the estate, though binding on the immediate parties to the contract of sale and purchase.—Clay's Digest, p. 223, §§ 13, 14 ; Weir v. Davis, 4 Ala. 442 ; Dearman v. Dearman, *ib.* 521; Fambro v. Gantt, 12 *ib.* 498 ; 10 Peters 161 ; 1 How,

Miss. 558 ; 2. Smedes & M. 527; 14 *ib.* 187; 1 Hill's (S. C.) R. 84 ; Swink's Adm'r v. Snodgrass, 17 Ala. 653 ; Hopper v. Steele, 18 *ib.* 828; Elliott v. Branch Bank at Mobile, 20 *ib.* 345.

4. The contract being against a positive statute, the administrator in chief was estopped from recovering the property.—Pistole v. Street, 5 Port. 64 ; 1 Ala. 449; 7 *ib.* 359 ; 3 M. & W. 240; 19 Conn. 338 ; Story on Contracts, § 491 ; Smith on Contracts, top p. 93.

5. The administrator in chief being estopped, the statute of limitations did not commence running until the appointment of the administrator *de bonis non.*—3 Stew. 172 ; Angell on Limitations, pp. 55 *et seq.;* Lawson's Adm'r v. Lay's Executor, 24 Ala. 184.

GEO. W. STONE, *contra :*

1. This court decided, when this case was formerly before it, that the order of the Orphans' Court of Lowndes, to sell the " perishable property", conferred ample authority on the administrator in chief to sell the slave and convey the title. The record fully shows that the slave was sold under that order, and hence the plaintiff has no title on which to maintain this action.—Steele v. Wyatt's Adm'r, 23 Ala. 764 ; Millard v. Hall, 24 *ib.* 209.

2. The testimony of Edwards and Mealing was only intended to show the publicity and fairness of the sale, and it certainly tended to do so. It was necessary for us to prove that the sale was public. Even if this proof was unnecessary, in whole or in part, it could not injure the appellant ; and an innocent error, not prejudicial to the appellant, is no ground for reversal ; nor will the court reverse, when, upon the whole case, the judgment is right. But the testimony was legal : it was in rebuttal of plaintiff's testimony.

3. The record of orders made by the same judge in other causes, and at other times, was *res inter alios acta,* and illegal as evidence in this case. The orders themselves must furnish their own exposition.

4. The charges asked were properly refused. They simply proposed to submit to the jury legal questions, viz., the proper construction of the orders, which were questions for the court.

5. The orphans-court judge had jurisdiction to grant the order of sale. Whether he exercised that jurisdiction rightfully or not cannot be inquired into collaterally. At all events, the charges which proposed to raise that question were clearly improper, and were rightly refused.

CHILTON, C. J.—1. A portion of the testimony of the witness Mealing, we should be inclined to reject as illegal; while other portions of it, tending to show efforts on the part of the administrators to procure bidders, and to give publicity to the sale, were entirely proper. But it was objected to as a whole—that is, two portions of it were embraced in separate objections going to each as a whole; and as each contains some legal proof, the court properly overruled the motions to exclude, since it was not authorized to reject that which was proper, nor bound to sift the evidence so as to separate it from that which was improper. Such have been the uniform decisions of this court.

2. There was no error in excluding from the jury the orders of the judge of the Orphans' Court, made in the matter of other estates, and which were offered as evidence of what the judge of said Orphans' Court meant by the order to sell the perishable property of Wyatt's estate. Such evidence was illegal for two reasons: 1st, it was clearly *res inter alios;* and, 2d, the construction of the order was for the court, and not for the jury. This the court must do, upon an inspection of the record of the Orphans' Court. That record showed the order, the sale of the personal property after it was granted, as returned by the administrator under oath, and the judicial enrollment of the inventory of the sale, as a part of the record of said court in the matter of the proceeding in said estate. These, we held, when the case was before us at a previous term, (see 23 Ala. 764,) showed that the order conferred authority to sell the slaves, as practically construed by the court making it and the parties acting under it.

3. The previous opinion of this court must stand as the law of this case; and as the record before us develops no proof materially changing the aspect in which it was then presented, the court below very properly charged the jury, that the former decision was binding upon the primary court,

that the order warranted the sale of the slave in suit, and that the result of the decision upon this point was not affected by any evidence which had been submitted.

4. The fourth charge, which is somewhat involved, but which is adroitly drawn, when clearly considered, cannot be supported. The point in that charge is, not that the administrator sold the slaves without advertising them, which should avoid the sale. That, with other supposed irregularities, had been distinctly submitted to the jury by the three charges immediately preceding the one under consideration. But the question presented by this charge was, conceding the order conferred authority to sell the slaves, and that they were sold and the return of the sale was duly made and recorded,—conceding, in other words, that everything had been actually conducted as required by law, save that the administrators did not believe the order conferred authority to sell the slaves, and consequently did not deem the sale as made under it, that this would make the purchase at such sale, by one of the administrators, fraudulent and void.

It is not pretended that this was a private sale—all the proof shows that it was public. Neither is there any evidence tending to show that the property was purchased at an under value. Nor is it attempted to show that the views said to be entertained by the administrators as to their authority to sell under the order were made known to the bidders. The contrary is inferable from the facts hypothetically stated in the charge. Now, if the sale was properly made in other respects, we do not see how the mere opinion, or mind of the personal representatives, which had not the least practical influence upon it, could in any way affect its validity. If it be supposed by the appellant's counsel that the former opinion of this court countenances the idea of going into proof *aliunde* to show the meaning of the order, he mistakes that opinion.— The practical construction of the parties and of the Orphans' Court was apparent from the record of that court. It would never do to allow the mere opinion, a mental reservation of the administrators, to invalidate a sale shown by the record to be valid, more especially after the lapse of some eighteen years, and thus to overturn titles upon which purchasers have so long reposed. The order must, as we have said, be con-

strued by the court upon an inspection of the record, and thus construed, furnished, as a conclusion of law, authority for the sale which was afterwards made; and if the sale was made in accordance with law, it is wholly immaterial what the administrators thought as to the extent of their authority, or about their compliance with it. We have not considered the failure to advertise in connection with this charge, for the reason, that the court had just charged, that if such failure existed, it avoided the sale. The court was not bound to repeat the charge; nor can we suppose the counsel intended, after having obtained the opinion of the court in a direct specific charge; that the failure to advertise would, of itself, render the sale invalid, to obtain a charge much less favorable to his side, by requiring the jury to find several other facts besides, and in addition to the want of advertisement, in order to avoid the sale. Whether the charges respecting the advertisement, the giving of bond and security, &c., were not too favorable to appellant, is a question we need not now decide. See, however, on this subject, Lay's Ex'rs v. Lawson's Adm'r, 23 Ala. 377. Esteeming it, then, as a charge which assumes that the *quo animo* of the party making the sale should avoid it, although such intent had not the least practical bearing on the sale, we think the court very properly overruled it.

5. The sixth and seventh charges asserted correct propositions of law. The jury had nothing to do with the understanding of the administrators, or of the Orphans' Court judge as to the meaning of the order of sale—that was for the court. But the appellant has not been injured by the refusal of these charges : they amounted to nothing more than instructions to the jury, that they had nothing to do with the decision of a question of law which the court had already correctly decided *against* the appellant. In this aspect, their refusal was clearly for the appellant's advantage; for, if the judge, by rejecting them, impliedly admitted the right of the jury to revise his decision adverse to appellant on a point of law, it gave the appellant an additional chance for a verdict, of which, of course, he cannot complain.

6. The other charges (numbers eight, nine and ten) question the jurisdiction of the Orphans' Court to make the order for

the sale of the slaves, because it does not appear to have been necessary.

Whether a sale was necessary, was a question for the determination of the Orphans' Court—a question upon which its jurisdiction depended ; and the rule is well settled, that where the jurisdiction of a court depends upon a fact which such court is required to ascertain and settle by its decision, as a preliminary to its jurisdiction, then the exercise of its jurisdiction implies the previous ascertainment of the preliminary jurisdictional fact, and the decision of the court as to the jurisdictional fact cannot collaterally be called in question.—Brittain v. Kinnard, 1 Brod. & Bing. 432 ; S. C., 5 Eng. Com. Law R. 137 ; 3 Phil. Ev. Cowen & Hill's Notes, pp. 10, 16, *et seq.*

Having decided that the order warranted the sale of the slave in question, the necessity for the order, being a preliminary question to be settled by the court, and without the ascertainment of which such order could not properly have been made, must be considered as having been made apparent to the court. This necessity might be shown even contemporaneously with the grant of administration. The three last charges were, therefore, properly refused.

Upon a careful examination of the record, and the points raised upon it, most of which are substantially covered by the previous decision, we can see no error prejudicial to the appellant. The judgment is consequently affirmed.