THE BANK OF BELLOWS FALLS *v.* THE RUTLAND & BURLINGTON RAILROAD COMPANY, WILLIAM RAYMOND LEE, SAMUEL HENSHAW AND THOMAS THATCHER.

[IN CHANCERY.]

*Enjoining proceedings in a court of law of another state. Jurisdiction.*

A court of equity in this state may enjoin parties from proceeding in a court of law in another state; but on principles of courtesy, and perhaps of policy, this power should not be exercised where the court of law has a concurrent jurisdiction, which was first assumed and exercised over the subject matter, unless there should exist some peculiar equitable ground for so doing.

Bank of B. Falls *v.* R. & B. R. Co. et als.

The mere preference of the orators to have the matter determined by their own domestic tribunals, is not a sufficient ground for such an interference: and the inability of the court of chancery to enforce the injunction, is a good reason why it should not be granted when the parties to be enjoined reside out of the state, and have no property within it for a writ of sequestration to operate upon.

Consideration of the above, and other reasons, why, in the present case, such an injunction should not be granted; nor the validity of a deed, upon which the defendants' right of action in the suit at law in another state depends, be tried and determined by a court of equity here.

Demurring to a bill in chancery, for want of equity in it, is submitting to the jurisdiction of the court. The question as to the jurisdiction of the court over the defendants, should be presented by plea.

APPEAL from the court of chancery. The defendants, with the exception of the Rutland and Burlington Railroad Company, were set up as residents of Massachusetts, and service was made upon Henshaw and Thatcher, by leaving a copy with Dugald Stewart, as their appointed and authorized agent, at Rutland in this state, and upon Lee, by leaving a copy with him at Roxbury, Mass. The following abstract of the bill sufficiently sets forth its general nature and object, in addition to what appears, in reference to it, in the opinion of the court.

November 16, 1853, the Rutland and Burlington Railroad Company, owed the plaintiffs $25,000 ; William Raymond Lee, then president of said company, and professing to act for them, but without authority, on that day made a deed of surrender to Samuel Henshaw, and J. Thomas Stevenson, of all the property and franchises of the company, in trust for the uses and purposes specified in a mortgage executed by said company to them, dated August 1st, 1850. The deeds of mortgage and surrender are referred to. By the terms of the mortgage, the company were to have the exclusive use, &c., of the road, &c., until conditions broken ; and, at the time of the surrender, the conditions of the mortgage had been fully performed, and in no ways broken. Lee had no lawful authority to make the surrender, but did so without the knowlegde or consent of the company, and with the fraudulent intent of defrauding the plaintiffs, and preventing them from securing their debts ; and Stevenson and Henshaw knew of the fraudulent intent, and participated therein by accepting the surrender, and agreeing to execute the trust. January 31st, 1854, the plaintiffs sued

the company on their said debts, and attached five engines with the tools used about them, and four passenger cars, and obtained judgments at the September Term of the Windham county court, 1854, for about $25,000, including damages and costs,—took out their executions, and had the attached property sold thereon in due time and form, and the proceeds of the sales were insufficient to satisfy the judgments.　January 1, 1854, Stevenson resigned, and Lee took his place as trustee, and thereafter Henshaw and Lee claimed to hold the attached property, under and by virtue of the surrender, and February 15, 1854, sued the plaintiffs in trespass for said property, which action is now pending before the supreme court in Boston, Mass., and which they threaten to prosecute to judgment and execution.　April 1, 1854, Lee resigned, and Thomas Thatcher, then president of the company, took Lee's place as trustee.　The plaintiffs further charge that the deed of surrender was not made in good faith, but for the purpose of defrauding the plaintiffs and other creditors, by placing the property of the company beyond the reach of their creditors ; and pray that the deed of surrender and conveyance of Nov. 16, 1853, may be vacated, set aside, and decreed to be null and void ; and that Lee, Henshaw and Thatcher, may be enjoined from prosecuting the trespass suit in Massachusetts, and also from proceeding at law against the plaintiffs touching any of the matters in question, and for further relief &c.

All the defendants appeared and demurred, because the bill " contains not any matter whereon this court can ground any decree, or give the complainants any relief or assistance."

The chancellor dismissed the bill at the September Term, 1855, from which the orators appealed.

*L. B. Peck* and *D. &. G. B. Kellogg* for the orators.

All the defendants have submitted to the jurisdiction by appearing and pleading.　But the question of jurisdiction is not raised. The demurrer is to the merits of the bill.　Had any of the defendants desired to raise this question, it should have been presented by plea.　*Thobudeau* v. *Rous,* Atkins 544.

The case then is to be considered and decided on the merits,— on the facts stated in the bill.　These facts being fully stated, they

must be taken as true for the purposes of this trial, as they stand admitted by the demurrer.

If the deed and act, under which the defendants claim, gives them no title to the property, either on the ground that they were unauthorized, or were a fraud on the orators, the jurisdiction of chancery to interfere is clear and undoubted. That the orators may avail themselves of this defense at law, is no answer to the bill. It is inequitable, and against conscience to permit a party to use a deed, or take advantage of an act thus improperly obtained. 6th Am. Ed. Mitford's Chan. Pleadings 149, 150–1–2. Coopers Pleadings 140. *Hamilton* v. *Cummings,* 1 John. Ch. 517. *Briggs* v. *French,* 1 Sumn. 504. *Peirsoll* v. *Elliott,* 6 Peters 95. *Newman* v. *Milner,* 2 Vesey, Jr. 483. *Jervis* v. *White,* 7 Vesey, Jr. 413. *Bromley* v. *Holland,* 5 [Vesey, Jr. 610. *Underhill* v. *Horwood,* 10 Vesey, Jr. 209. *Hayward* v. *Dimsdale,* 17 Vesey 112.

The transfer of the property to the trustees is charged to have been fraudulent, and made and received for the purpose of avoiding the orators' debt. This gives the court jurisdiction. Fraud is always a ground of relief in equity, though there may be a remedy at law. Adams' Eq. 610, and note. Cooper's Eq. Plead. 139.

The defendants, holding by virtue of a fraudulent conveyance, hold as trustees for the orators, who are creditors, and chancery ought not to permit the trustees to harrass the *cestui que trusts,* by a suit at law.

Parties are often enjoined from proceeding in the courts of another jurisdiction. Judge Story in his treatise on Equity Jurisprudence, lays down the rule as undoubted, that such decrees may be made. 2 Story's Eq. Jurisp. § 899, 900–1 and note, p. 230. *Bushby* v. *Munday,* 5 Madd. 307. *Cruikshanks* v. *Roberts,* 6 Madd. 104. *Beckford* v. *Kemble,* 1 Sim. & Stu. 7. *Portaslington* v. *Soulby,* 3 McKeen 104.

To authorize such a decree, it is not even necessary that the defendant should reside within the jurisdiction of the court. If the subpœna is served on him within that jurisdiction, that is sufficient, though he may only be passing through the state. *Mitchell* v. *Bunch,* 2 Paige 606, and cases cited by chancellor.

If the court should decline to enjoin the defendants from pro-

ceeding at law, they may prohibit them from setting up any claim under the deed, or declare it inoperative, as against the orators.

There are special and peculiar reasons calling for the interposition of a court of equity, in this state, in the present case. Both the orators and the defendants, Lee and Thatcher, claim under the Rutland & Burlington Railroad Company. This company is located here, and charged as a party to the fraud. The subject-matter of the controversy arose and remains here. The property was located here and subject to our laws, and the jurisdiction of our courts.

Under the circumstances, the defendants ought not to be permitted to draw this matter of controversy into another jurisdiction, and force the orators to go there and litigate the matter. If the defendants claim rights under our laws, they should permit those laws to be construed, and those rights to be determined by our courts.

*D. A. Smalley* for the defendants.

This court has no power to enjoin legal proceedings, regularly commenced by citizens of another state in the courts of that state. Such jurisdiction would be against comity and sound policy. It would result in retaliation by the foreign court, which would have the same power to restrain the proceedings of this court. Nor could such an injunction be enforced. This principle is well settled. *Mead* v. *Merrith & Peck*, 2 Paige 402. *Bicknell* v. *Field*, 8 Paige 440. *Burgess* v. *Smith*, 2 Barb. Ch. 277. 2 Story's Eq. Juris. § 899, 900, 743, 744. Story's Eq. Pleadings § 489, 490.

Even the federal courts will never restrain proceedings in a state court, nor permit the state courts to restrain proceedings in the federal courts. *Diggs & Keith* v. *Wolcott*, 2 U. S. Cond. R. 75. *McKein* v. *Vashers*, 7 Cranch 492.

Especially does this objection apply to the present case, where the court has not got jurisdiction of the parties. The defendants are not within the jurisdiction, and are only constructively before the court.

See original bill and return of service, from which it appears that the bill was served by a Vermont officer, on the defendants in Boston.

The objection may well be taken by demurrer. *Bicknell* v *Field*, above cited. Story's Eq. Plead. § 493.

The appearance of the defendants was only to object to the jurisdiction, which they did at the earliest possible moment.

The court will not entertain a bill to set aside the deed of surrender, at the instance of those not parties or privies to it. If void as to the orators, it will be so treated at law and in equity, and can do them no harm. But so long as acquiesced in by the parties to it, it is good against them, and will not be cancelled or set aside at the instance of those not affected by it. Nor would such a decree be of any benefit to the orators, unless accompanied by an injunction against the further prosecution of the suit in Massachusetts.

Aside from these objections, the bill presents no case for the interference of this court.

A defendant can only enjoin a suit at law, and transfer the litigation to a court of equity, when the defense set up is of an equitable character, and peculiarly cognizable in chancery. *Mitchell* v. *Oakley*, 7 Paige 68. *Barrett* v. *Sargeant*, 18 Vt. 365. *Washburn* v. *Titus*, 9 Vt. 211. *Viele* v. *Hoag*, 24 Vt. 46. *Russell* v. *Clark's Exrs.*, 2 U. S. Cond. 417. Story's Eq. Plead. 473, 481–2.

The opinion of the court was delivered, at the circuit session in October, by

BENNETT, J. The facts charged in the bill are quite briefly recapitulated in the abstract furnished to the court, which may be referred to, as well as the prayer of the bill. The case shows that all the defendants appeared and demurred to the bill, upon the ground that it contains no matter whereon a court of chancery can ground a decree, or give the complainants any relief or assistance. The bill seeks to have the deed of surrender declared void, and that Lee, Henshaw and Thatcher may be perpetually enjoined from the prosecution of the action of trespass now pending, against the orators in this bill, in the supreme court of Massachusetts.

Before proceeding to an examination of this case, it should be remarked that Lee, Henshaw and Thatcher are all set up in the bill as residents of Massachusetts, and that the facts alleged in it, are all examinable at law, and a court of law is as competent to decide upon them, as a court of equity. No fact is alleged which

disenables the orators from having their case, in the court of Massa-
chusetts, fairly and fully tried at law; and nothing is alleged to pre-
vent that court from exercising their full judgment, and granting
full and adequate relief, if the allegations in the bill are true. No
defect of testimony is alleged, no discovery is sought, and no appeal
is made to the conscience of the defendants. The facts which are
alleged, have precisely the same operation in a court of law as they
would have in a court of equity; and it is not even insinuated in
the bill that a resort to chancery is necessary to prove them. The
plaintiffs' *claim*, in the action at law, is for *damages*, alleged to have
been sustained by reason of a wrongful taking of property of which
they had the legal title; and it becomes an interesting inquiry
whether a court of chancery in this state, under the circumstances
in this case, should, in effect, withdraw from the court of Massa-
chusetts the power to proceed in the case, either by declaring the
deed of surrender *void*, or by injunction on the parties, and thus,
in effect, *oust* the court of Massachusetts of a jurisdiction which
had rightfully attached, and that, too, in behalf of her own citizens,
and *before* any proceedings were instituted in the court of equity
in this state. In the case of *Mead* v. *Merritt*, 2 Paige 404, it is
held by the chancellor that an injunction bill will not be sustained
to restrain proceedings in a suit previously commenced in a court
of a sister state, by acting on the parties within its jurisdiction; and
he says that not only *comity*, but *public policy* forbids the exercise
of such a power. See also *Bicknell* v. *Field*, 8 Paige 440; and
in *Burgess* v. *Smith*, 2 Barbour's Ch. Rep. 280; the chancellor says,
it must be a very special case, (if the court has the power,) which
will induce it to break over the rule of comity and policy, which
forbids the restraining of the proceedings in a suit already com-
menced in a sister state, in a court of competent jurisdiction. See
also *Costa* v. *Griswold*, 4 Edwards' Chancery Reps. 364. But we
are not disposed to put the case upon any such narrow ground, and
we apprehend that, in a proper case, it is entirely competent for a
court of chancery to restrain a party within the jurisdiction of this
state, from pursuing an action commenced in a court of law in
a sister state. Although it was held, at an early day, in the case
of *Love* v. *Baker*, 1 Chancery Cases 67, by LORD CLARENDON,
that an injunction would not lie to stay a suit at Leghorn, yet in

subsequent times this case has not been followed, and it has been regarded as at variance with first principles. In the case of *Bushby* v. *Munday*, 5 Mad. 297, the defendant was restrained from proceeding in a suit previously commenced in the court of sessions in Scotland; and though Scotland was a part of the British possessions, yet her courts were distinct and independent; and it was there said that the principle would be the same, when the suit, which it was sought to enjoin, was pending in any foreign jurisdiction. See Eden on Injunctions, 3 Amer. edition, vol. 1, p. 176, and 2 vol. Story's Equi. Jurisprudence, sections 899 and 900, and notes, and the cases there cited, which seem fully to establish the position that, though courts of equity do not control the courts of another country, yet they may control persons and things within their own territorial limits; and that it may act *in personam* upon such parties, and enforce obedience to their decrees by process *in personam*. We apprehend that the courts of sister states, in relation to this principle, stand upon the same ground as courts strictly foreign. Judge Story treats the cases, which show that state courts cannot enjoin proceedings in the courts of the United States, nor the latter in the former, as exceptions to the general doctrine, and as proceeding upon peculiar grounds of municipal and constitutional law. Admitting then, the power of the court of chancery to enjoin a party from proceeding in the prosecution of a suit at law, previously commenced in the courts of a sister state, in a proper case, the inquiry arises, is this such a case? It is a familiar rule, in a court of chancery, not to entertain jurisdiction where there is a plain and adequate remedy at law; but the argument in this case, in behalf of the orators, is that the bill charges *gross fraud*, which stands admitted by the demurrer; and that courts of equity have concurrent jurisdiction with courts of law in all matters of fraud. Suppose we admit the proposition to be true, to its full extent, will it aid the orators' case? We think not. We hold it to be a sound rule of law, based upon the most salutary principle, that in all cases of concurrent jurisdiction, the court that has first possession of the matter should be left to decide it, unless there exists some peculiar equitable ground for withdrawing a controversy from a court of law to a court of chancery, and which disenables the party, having the law in his favor, from bringing his case fairly and fully before

a court of law. This principle is founded upon the courtesy which courts of concurrent jurisdiction should exercise towards each other, and may be necessary, as matter of policy, to prevent a conflict in the action of different courts. In the case of *Stearns* v. *Stearns,* 16 Massachusetts 171, a decree of the court of probate, appointing commissioners to make partition among the heirs, was reversed upon the ground that, *before* any proceedings were had in the probate court, a petition for partition was pending in the courts of common law ·which had concurrent jurisdiction with the court of probate to make partition among the heirs. The case goes upon the ground that the court, where the first jurisdiction had attached, had the paramount authority. So in *Mallett* v. *Dexter, administrator of Fenner,* 1 Curtis C. C. Rep. 178, the court refused to draw the administrator into a court of chancery for an account and settlement of his administration, it appearing that *before* any proceedings had been had in chancery, the defendant was in the process of settling his administration before a court of probate of Rhode Island.

This was a case where a court of equity had original chancery jurisdiction, *concurrent* with the court of probate. In a recent case in equity in the circuit court of the United States for Maryland, where the state court, as a court of equity, had taken jurisdiction of the subject matter, it was held that the rule of comity required that paramount authority should be yielded to the court, before which the proceedings were first instituted, and where the jurisdiction first attached, although the courts had concurrent jurisdiction, one being a federal, and the other a state tribunal. See vol. 4, American Law Register, page 526, July No., 1856. In *Smith* v. *McIver,* 9 Wheaton 532, the principle is laid down, as applicable to a case pending at law and in equity, that where there is a concurrent jurisdiction in the two courts, upon the ground of fraud, that the court, (and in that case it was the court of law,) which first takes jurisdiction, must determine the case conclusively. See to the same effect, *Thompson* v. *Hill,* 3 Yerger 167 ; and *Flournoy's, executors* v. *Halcomb,* 2 Munf. 34; *Winn* v. *Albert,* 2 Maryland Ch. Decis. 42; *Gould* v. *Hayes,* 19 Alabama 438 ; *Waples* v. *Waples,* 1 Harrington, 392. In the case of *Pugh* v. *Brown et al.,* 19 Ohio Rep. 202, 211, it was also held that if a

court of chancery has obtained rightful jurisdiction over a subject matter, another court of chancery, of equal authority, will not assert jurisdiction over the same matter. The case of *Shelby* v. *Bacon, et al.* 10 Howard 56, is not opposed to the decision made in this case. In that case, the complainant had the right to come in to the United States court to establish his claim as a creditor, and to compel the trustee to pay to him his distribution share of the assets of the assignor; and the state court had not obtained jurisdiction over either of these subjects; and it is by no means decided, in that case, that if the plea had shown that the state court was in the exercise of a jurisdiction over the subject-matter of the accounts of the trustees, with an authority to act *in rem*, the complainant could have compelled the trustees to come into another jurisdiction to settle their accounts.

Going, then, upon the ground that a court of equity has the power to stay a party from proceeding at law in a foreign court, or in a court of a sister state, and would exercise the power in a case where the ends of justice require it, notwithstanding the courtesy which should be maintained between courts of different jurisdictions; yet this is not, we think, such a case. It is to be presumed that the ends of justice will be fully subserved, when we leave this controversy to be settled in the courts of Massachusetts, in which the jurisdiction first attached. We know it is not unfrequently the case, that a party may prefer to have a controversy settled by its own domestic tribunals; and it is quite possible that the orators may have been actuated by some such motive in bringing this bill; but this is not a reason upon which this court can act.

We think there is another reason why this court should not enjoin the party from proceeding in their action in Massachusetts. It would be worse than idle for the court of chancery, in this state, to decree an injunction when they have not the means of enforcing its decree. It is well understood that by the *primary* jurisdiction of courts of equity, they acted merely *in personam*, and an obedience to its decrees was compelled by attachment against the bodies of the parties; and the mode, now sometimes adopted, of compelling an obedience to its decrees, by a sequestration of the property of the party, is, comparatively speaking, of modern origin. But in the

present case, there is no pretence that these defendants have property, subject to sequestration, within this state. They hold the railroad property as trustees, and the rights of the *cestui que trusts*, could not be affected by a sequestration of the property.

I see no way to make a decree enjoining the party effectual, in the case before us. The persons, against whom the injunction is sought, are residents of Massachusetts, and were not personally within the jurisdiction of the court of chancery at the time the process of that court was served upon them. If they had been, a performance of a decree of injunction might have been secured by means of *equitable bail*, as it is termed, obtained by means of a *ne exeat*, in a case proper for such a writ to issue. Whether this would have been a proper case for a *ne exeat*, it is not necessary to inquire.

The case of *Mitchell* v. *Bunch*, to which the court have been referred, 2 Paige 606, came up upon an application to discharge a *ne exeat* which had been granted against a resident of Carthagena, who was *temporarily* within the state of New York; and it was discharged by the chancellor upon the ground that the defendant in the bill had been held to bail on the same debt, in an action commenced in the circuit court of the United States, that is unless the complainant should elect to discharge him from the arrest in the circuit court, upon his appearance, or filing common bail. This is the very point in the case, and it seems to have but little bearing upon the question now before us, in showing that an injunction could be made effective.

We have no difficulty in regard to the jurisdiction of the court over these parties. All the defendants have, in fact, submitted to the jurisdiction by appearing and pleading to the merits of the bill, the demurrer being simply for want of equity in the bill; and if the defendants wished to raise the question of jurisdiction over them, it should have been presented by plea; *Roberdeau* v. *Rous*, 1 Atkins Rep. 544. It is said that the act of 1854, makes the defendants citizens of this state, and subjects them to the jurisdiction of our courts. See statute of 1854, p. 32, relating to the service of process on non-resident trustees of railroad corporations. The most that can be claimed is, that this act brings certain persons within the reach of process, and provides for a mode of service

upon them, but it furnishes no reason why a court should make a decree, which it is not in their power to make effective.

It is claimed by the orators that, if this court should decline to enjoin the defendants from proceeding at law, they may and should prohibit them from setting up any claim under the deed ; or declare it void, as against the orators ; and it becomes an important inquiry, whether chancery should grant the relief prayed for in either of these forms. The same difficulty exists in making a decree effective, enjoining the party from setting up any claim under the deed, in the court of Massachusetts, as would exist in case the decree should pass in the form of an injunction against the party, from further proceeding in the action at law. A decree, in either form, would simply act *in personam*, and could be enforced only by process *in personam*, but it may be claimed and admitted that a decree declaring the deed void, would act upon the transaction. The bill alleges this deed of surrender void on two grounds, first, because the deed was executed by the president of the railroad company, without any authority, and secondly because it was executed in fraud of the rights of the orators, as creditors of the railroad company. It may be remarked that this controversy only relates to personal property, and, upon the allegations in the bill, the complainants have a most plenary defense in the action at law, as has been before stated. There are many cases in the books, in which courts of equity have given relief, by decreeing the delivery up or the cancellation or rescission of agreements, deeds and other instruments, but in such cases, the jurisdiction of chancery is put upon some peculiar ground, and rests in the sound discretion of the chancellor, and is not a matter of absolute right. The discretion of the chancellor, however, is not to be an arbitrary or a capricious discretion, but a reasonable one, which will commend itself to the conscience of the chancellor, under all the circumstances of the particular case. The jurisdiction, in such a case, proceeds upon the ground of administering protective, or preventive justice, and the cases go upon the principle *quia timet,* as it is technically called ; and the inquiry now is, are there any particular circumstances attending this case, that should induce a court of chancery to grant the peculiar remedy, which, in this re-

spect, is sought by this bill. In cases of fraudulent conveyance of real estate, it has been held that the remedy at law is not adequate and complete for all purposes, inasmuch as the deed may throw a cloud over the title, and for this reason chancery has taken jurisdiction to set it aside. So instruments are often decreed void, and to be cancelled, although the objections to their validity may be urged at law, and this for fear that, by the lapse of time, the evidence to impeach them may be be lost, and also in cases where the party may be exposed to vexatious suits, as often as it may suit the purpose of the holder to gratify a spirit of litigation and vexation.

The opinion of CHANCELLOR KENT, in the case of *Hamilton* v. *Cummings*, 1 John. Ch. 577, to which we have been referred by counsel, is a strong case for the exercise of the jurisdiction, and contains a review of most of the leading cases on the subject, up to that time ; yet he puts the jurisdiction, or perhaps more properly the exercise of the power, in the sound discretion of the court, and to be regulated by the circumstances of each particular case. It is quite evident the chancellor, in that case, intended the exercise of the jurisdiction to be somewhat modified, for he uses this emphatic language : " but while I assert" (he says) " the authority of the court to sustain such bills, I am not to be understood as encouraging applications where the fitness of the exercise of the power of the court is not pretty strongly displayed. Perhaps" (he adds) " the cases may all be reconciled on the general principle that the exercise of this power is to be regulated by sound discretion, as the circumstances of the individual case may dictate, and that the resort to equity, to be sustained, must be expedient, either because the instrument is liable to abuse from its negotiable character, or because the defense, not arising upon its face, may be difficult or uncertain at law, or from some other special circumstances, peculiar to the case, and rendering a resort to chancery proper, and clear of all suspicion of any design to promote expense and litigation," and I might add, also, to change the forum of the trial without any good reason.

The bond, in the case in Johnson, had been taken under a secret trust, and there had been a failure of that trust, and the chancellor

viewed it, at least, as doubtful, whether at law a failure of the trust could be used as a defense. In such a case, the power of the chancellor to cancel the bond is clear.

*Peirsoll et al.* v. *Elliott et al.*, 6 Peters, was a bill for a perpetual injunction, and to compel a delivery up of a deed of conveyance of land, which was void upon its face, and the court declined to give the relief prayed, upon the ground that it was void upon its face, and consequently the defense must have been plain, adequate and complete at law. Though it does not appear that the deed of surrender in the present case was void upon its face, yet the infirmities in the deed, as claimed to exist in the bill, are equally examinable and available at law, as in chancery; and we apprehend there are no peculiar reasons, which exist in the present case, why the court should exercise the powers which they are asked to do by the bill. The suit at law to try the validity of this deed, was pending when this suit was commenced, and most probably will be brought to a final determination in a shorter time than would be required, in a court of chancery, to bring the controversy to an end; and hence a fear that the testimony necessary to show the infirmities in the deed may be lost by lapse of time, cannot be urged as a good ground for going into chancery. In a case where a bill, *quia timet*, was filed to compel the delivery up of an apprentice's indentures, after he was out of his time, a decree was made upon the master, in the alternative, that he should either bring his action at law in one year, or deliver up the indentures. *Bracken* v. *Bentley*, 1 Chan. Rep. 110.

Though it may be a wholesome jurisdiction for chancery to exercise, to order *void instruments* to be delivered up, in cases where *vexatious* demands might afterwards be made upon them; yet in the present case there is no more vexation in having the rights of the parties tried at law, than there would be in chancery, and there may be much less. An adjudication in either court, upon the validity of the deed of surrender, would be final and conclusive upon the parties; and I am not now aware of a case where a creditor levying an execution upon *personal* property has been allowed to go into chancery to set aside a conveyance of such property, for fraud, upon the sole ground that it cast a cloud upon the title to the property, especially while a suit was pending by the claimants

at law, to recover the value of the property. The claimants of this property reside in Massachusetts, and if it has been wrongfully taken from them in this state, their right of action is transitory, and the suit may well be brought in that state, provided the court have acquired jurisdiction over the bank. We do not see that the *situs* of the railroad company, under whom each one of the parties claim, or of the subject matter of the controversy, or a consideration of the question by what laws the rights of the parties are to be determined, can be made the ground of any equitable right peculiar to the complainants, or furnish a sufficient reason why this court should override and control indirectly the jurisdiction of the court of Massachusetts.

It is no doubt true that there is considerable contrariety of opinion in the cases in England, and in this country, relative to the questions which arise in this case, and it would occupy too much time and space to analyze and compare them one with another.

In the case of *Mitchell* v. *Oakley*, 7 Paige 68, it was held, in a case where the complainant had a perfect defense at law in a suit pending against him, taking the allegations in his bill to be true, that, although a court of chancery had concurrent jurisdiction with a court of law in relation to the subject matter of the suit, yet it would not grant a preliminary injunction for the mere purpose of obtaining *exclusive* jurisdiction of the suit, but that the party might, in such a case, come into chancery for relief upon the *final hearing* of his cause, subject to the power of the court to refuse him his costs, and that to entitle him to a *preliminary* injunction to stay procedings in a common law court, first commenced, he must show, *by his bill*, that some injustice would be done him, or that he would be deprived of some legal or equitable right if the proceedings at law were permitted to proceed. To the same effect is *Gridley* v. *Gavaison*, 4 Paige 647. It may be remarked that there are no allegations in the orator's bill to show a necessity of going into chancery for the furtherance of justice, and the cases in Paige would require this court even to refuse a *preliminary injunction*, staying the proceedings in Massachusetts. But so far as those cases go to show that the complainant may come into chancery for relief upon a *final hearing*, subject to be disallowed his costs, it appears to us they are not founded upon any sound or *salutary*

principle. They leave to the adversary the right to proceed in a litigation of the facts in a common law trial, at the same time the proceedings are going on in chancery, and, upon a *final* hearing in chancery, the common law court may be ousted of their jurisdiction to proceed in the cause. The doctrine of those cases leads to a needless accumulation of costs to the parties, and a conflict is induced between the parties, and between the courts, in determining in which court a *final* hearing shall be first had. It appears to us much more accordant to sound principle and policy, in such cases of concurrent jurisdiction, where there is no occasion of going into chancery, to hold that that court which has first assumed jurisdiction and control over the subject matter of the controversy, should be entitled to retain it for a final hearing, and such we believe to be the current of authority.

We think the decree of the dismissal of this bill, by the chancellor, should be affirmed with costs. Let the cause be remanded accordingly.