WILLIAM B. DINSMORE, AS PRESIDENT OF THE ADAMS EXPRESS COMPANY, RESPONDENT, v. EMIL AUGUSTUS NERESHEIMER AND OTHERS, APPELLANTS.

SAME, RESPONDENT, v. MOSES G. BALDWIN AND OTHERS, APPELLANTS.

*Injunction—when it will be granted to restrain the prosecution of actions brought in another State.*

The defendant, a resident of the State of New York, commenced two actions against an express company in the Supreme Court of the District of Columbia, to recover the value of two packages, one of which was to have been delivered in Philadelphia and the other in Chicago. By the terms of the receipts the liability of the company upon the first was fixed at fifty dollars, no specific valuation being placed upon it by the sender; its liability upon the second was fixed at $200, it having been valued at that amount. In the actions brought in the District of Columbia $4,000 was claimed in one, and $7,000 in the other action; the packages being alleged to have been worth $2,000 and $3,695.91, respectively. The actions were brought in the District of Columbia in order to avoid the decision of the Court of Appeals of this State, sustaining the validity of the provisions in the receipts limiting the company's liability, and to take advantage of a decision to the contrary made by the Supreme Court of the District of Columbia. Before the commencement of this action the company tendered and offered to pay the amounts for which it was liable by the terms of the receipts.

*Held,* that the company could maintain an action in this State to restrain the defendant from prosecuting the actions brought in the District of Columbia.

APPEAL from an order made at a Special Term, continuing an injunction granted in this action.

*John G. Agar* and *Louis N. Fulton,* for the appellants.

*Charles M. DaCosta* and *C. A. Seward,* for the respondent.

DANIELS, J.:

The injunction restrained the prosecution by the defendants of two suits, commenced by them against the Adams Express Company, in the Supreme Court of the District of Columbia. Each of the suits was brought to recover the value of a package which had been delivered to the express company, one of which was to be carried to and delivered at the city of Philadelphia, and the other carried to

and delivered at Chicago. By the terms of the receipt and contract for the package received from the defendants to be delivered in Philadelphia, the liability of the company was expressly limited, in case of loss, to the sum of fifty dollars, as no specific valuation of the package was stated in the instrument. In the other, a valuation was placed upon it of two hundred dollars, which by the terms of the agreement would be the extent of the carrier's liability for the loss of the package; while in the other it would not exceed the sum of fifty dollars.

These contracts have been so construed and sustained by the highest court of this State (*Magnin* v. *Dinsmore*, 70 N. Y., 410), and the amounts payable according to this construction have been tendered and offered by the company to the defendants. Before this tender and before the commencement of this action, the defendants commenced two suits against the express company in the District of Columbia to recover for the loss of these packages, claiming in the statements made of their causes of action to recover the sum of $4,000 for one of the packages and $7,000 for the other, and it is stated that the actual value of one of these packages which were lost was the sum of $2,000, and of the other the sum of $3,695.91.

By a decision of the Supreme Court of the District of Columbia, that tribunal, for the reasons stated in its opinion, has declined to sustain the limitation placed upon the liability of the company in case of loss by the terms of an agreement similar to those delivered, for the carriage of these packages, to the defendants. This was held in the case of *Galt* v. *Adams Express Company* (reported in the Washington Law Reporter), and it was probably to obtain the advantage of this ruling and to recover the full value of the packages themselves, notwithstanding the limitation placed by the contract upon the defendants' liability, that the actions were instituted in the Supreme Court of the District of Columbia. And it was to prevent the attainment of the same result that this action was brought to restrain the prosecution of these suits. The defendants by informing the company of the value of their packages and paying a corresponding increase for the risk of their carriage on delivering them, might have secured a complete right of indemnity against the company for their loss. But they omitted to do that and delivered one of the packages without any

valuation whatever, and the other at the low valuation of $200. And to allow them to avoid the restraint of the contracts upon this subject and hold the defendant liable for the full value of the articles, in plain violation of their language, would be to perpetrate a successful fraud upon the company, as the facts have been made to appear, and it was to prevent the success of this attempt that the injunction in this case was issued and continued by the court.

In support of the appeal it has been urged that this injunction was improper, and that upon the facts as they have been disclosed the law does not sanction the issuing of an injunction by the courts of one State to restrain the prosecution of actions in another State or in the District of Columbia. But it is the province of a court of equity to prevent one party from taking an unconscionable advantage of another, and when that may be attempted, to interpose and restrain the success of the act, by means of an injunction, and when that advantage is sought through the instrumentality of a legal action to restrain its prosecution and subordinate the controversy to the control and determination of equitable principles. This view was taken and enforced by a comprehensive and able opinion of LAWRENCE, J., in *Claffin* v. *Hamlin* (62 How., 284); and he also considered it in *Reinach* v. *Meyer* (55 id., 283). In the *Erie Railroad Company* v. *Ramsey* (45 N. Y., 637) the same subject was before the Court of Appeals for its consideration and it was determined that in a proper case, where equity required it should be done, that an injunction might regularly issue from one court to restrain proceedings carried on in another. It is true the precise point presented by this appeal was not then directly before the court, but the principle on which its decision proceeded included a controversy of the nature of the present one. The principle has been regarded and stated as elementary in its character, that a court of equity should interfere when sufficient equitable reasons are presented for doing so, to restrain the prosecution of an unconscionable action, although it may be pending in the courts of another State or country. (Story's Eq. Jur., § 899.) This may be done without interfering with the proceedings themselves, by controlling the conduct of the parties when they are subject to the jurisdiction of the court so interposing for the prevention of injustice. The power so to interfere was carefully considered in *Carron Iron Company* v. *Maclaren*

(35 English Law and Equity, 37). It is true the action which was there restrained was commenced after legal proceedings had been begun in one of the English tribunals. But that can make no substantial difference with the application of the principle. For, if the litigation to be restrained is inequitable and unconscionable, the same principle will require the interposition of a court of equity for that purpose, whether the action in the foreign tribunal be commenced before or after a domestic tribunal may have acquired jurisdiction over it. The principle which will justify the issuing of an injunction in one case will equally sustain it in the other, and in the case last mentioned, which was the determination of the house of lords, the English authorities upon this subject were carefully examined and considered, and CRANWORTH, Lord Chancellor, stated the rule which in his judgment was to be deduced from them to be that " there is no doubt as to the power of the Court of Chancery to restrain persons within its jurisdiction from instituting or prosecuting suits in foreign courts, wherever the circumstances of the case make such an interposition necessary or expedient." " Where, therefore, pending a litigation here in which complete relief may be had, a party to the suit institutes proceedings abroad, the Court of Chancery in general considers that act as a vexatious harassing of the opposite party and restrains the foreign proceedings." (Id., 49.) " If a person within the jurisdiction of the Court of Chancery is instituting proceedings in a foreign court, the instituting of which is contrary to equity and good conscience, the court will, on a bill filed here, restrain the prosecution of such foreign suit." (Id., 50.)

This principle is peculiarly applicable to the present case. The suits in the District of Columbia were commenced against the company by resident citizens of this State, to enforce a measure of liability which under the facts as they have been made to appear, would be inequitable and oppressive and in violation of the restraints contained in the contracts voluntarily entered into and accepted, one of whose purposes was to declare the extent of the liability of the carrier for default in the performance of the agreements. This general subject was very thoroughly examined in *Dehon* v. *Foster* (4 Allen, 545), and the general principle was held to be " founded on the clear authority vested in courts of equity over persons within

the limits of their jurisdiction and amenable to process, to restain them from doing acts which will work wrong and injury to others and are therefore contrary to equity and good conscience." (Id., 550.) And as the result of the application of this general principle that court restrained the prosecution by the defendants of certain legal proceedings which they had instituted by attachment in the State of Pennsylvania, and the right to interpose was reasserted in *Dehon* v. *Foster* (7 Allen, 57). The principle was also made the subject of examination in *Bank of Bellows Falls* v. *Rutland, etc., Railroad Company* (28 Vt., 470), where it was held that an injunction would regularly issue to restrain the prosecution of an action in the courts of another State or country, where there was some peculiar equitable reason for interfering in that manner.

These authorities are very decisive in support of the power exercised by the court in issuing this injunction, so much so as to render it unnecessary to make any special reference to those relied upon in support of the appeal. For while they lend some countenance to the position taken by the defendant's counsel, as their facts vary so widely from those now appearing, they are still in entire harmony with the authorities to which reference has already been made.

These authorities bear directly and explicitly upon the precise point presented for consideration and sustain the jurisdiction of the court as well as the propriety of extending it over the defendants in the action.

It would be extremely unjust as well as inequitable and oppressive to allow the defendants to enforce the contracts of the company against it in the manner in which they have attempted to do that by their action in the Supreme Court of the District of Columbia. In the sense of a Court of Equity, as this term is understood, it would be a fraud, which it is one of the objects of equitable tribunals to prevent from being successfully perpetrated. The interposition of the court in this matter was required by the facts which were made to appear, and are substantially undisputed. The order from which the appeal has been taken should be affirmed, with the usual costs and disbursements.

*William B. Dinsmore, President, respondent,* v. *Moses G. Baldwin and others, appellants,* is similar in its facts. No valuation

whatever was placed upon the package delivered to the company, and by the terms of the agreement made, the defendants were consequently restricted to the sum of fifty dollars in case of loss, and yet by their action in the Supreme Court of the District of Columbia, they claimed the package which was delivered to the plaintiff to be carried by it to be of the value of $1,044.31, and to recover that amount.

The principle already referred to and applied, equally sustains the injunction which was issued to restrain the prosecution of that action, and the appeal taken from the order in that case should also be affirmed, with the same costs and disbursements.

DAVIS, P. J., concurred.

Present — DAVIS, P. J., and DANIELS, J.

Order affirmed, with ten dollars costs and disbursements.