## THE STATE ex rel. BALLEW v. WOODSON, Judge.

**In Banc, March 26, 1901.**

1. **Certiorari:** QUESTIONS CONSIDERED. The Supreme Court, in a certiorari proceeding, will not review the rulings of the trial court on questions whether it had jurisdiction, unless an appeal or writ of error affords no adequate remedy.

2. **Final Decree in Vacation:** CIRCUIT JUDGE: APPOINTMENT OF RECEIVER. Under the Missouri judicial system the judge of a circuit court has no authority in vacation to render a final decree or judgment in any case. A statute which would confer on the circuit judge the authority in vacation to appoint a receiver and to hear and determine the whole issues in a suit to wind up a building and loan association, would be unconstitutional.

3. ———: MEANING OF THE WORD "COURT." The word "courts" in that part of the Constitution which vests the judicial power in certain courts therein named, is used in its technical sense. The judge is rightly called the "court" only when the judicial body over which he presides is in session. A "court" is a judicial assembly; the judge is its presiding officer.

4. ———: BUILDING AND LOAN STATUTE: MEANING WHEN COMPARED WITH INSURANCE STATUTE. The statute concerning the winding up of building and loan associations is no authority for the rendering of a final decree in vacation. It says the process, pleadings and proceedings shall be the same as in the winding up of insurance companies, but it does not say or mean that the jurisdiction of the circuit judge in vacation shall be the same as that given by the insurance statute. Besides, the insurance statute, which provides that the same proceedings may be had in vacation as in term time, was passed under the Constitution of 1865, which did not dispose of all the judicial powers of the State, as did that of 1875, but made mention of "such other tribunals as the Legislature might prescribe." Hence, these words have no place in the insurance statute since the Constitution of 1875 became operative.

5. ———: ———: RECEIVER. The circuit judge in vacation has authority to appoint a receiver of a building and loan association, upon a proper showing, and to require him to give bond, take possession of its assets, and preserve them until the court in due course can make judicial investigation. But he can go no further, even though the corporation's answer is filed and presented to him along with the petition. He can not dissolve the corporation and direct the receivers to proceed to administer the estate of the association, and all such orders in vacation are void. There must be in term time an adjudication upon the statements contained in the petition. But at the next succeeding term the court can make such orders, and make any further orders for preserving the estate as the emergency demands, and whether it errs or not in so doing is not open to review in certiorari, since it then had jurisdiction both of the persons and subject-matter.

*Certiorari.*

ORDER QUASHED IN PART.

*Crow & Eastin* and *Vinton Pike* for relator.

*O. M. Spencer, Huston & Brewster* and *Benjamin J. Woodson* for respondent.

VALLIANT, J.—This writ of certiorari, which issued at the instance of certain stockholders of the Phoenix Loan Association, brings up the record of the Buchanan Circuit Court in the case of State ex rel. Gray v. Phœnix Loan Ass'n, 159 Mo. 102, from which record it appears that it is a suit instituted by the Supervisor of Building and Loan Associations, in his official character, under section 1392, Revised Statutes 1899, looking to the dissolution of the Phœnix Loan Association and the winding up of its affairs.

The suit was begun by the filing of the petition in the circuit clerk's office during the vacation of that court, on July 15, 1899. At the same time the answer of the defendant corporation was filed, and on the same day the petition and answer were presented to a judge of that court in chambers, who thereupon made and signed an order in the words following to-wit:

"In the Circuit Court of Missouri, within and for Buchanan County. In Vacation. State of Missouri ex rel. Henry L. Gray, Supervisor of Building & Loan Associations, Relator, v. Phœnix Loan Association of St. Joseph, Missouri, Respondent.

"Whereas, Henry L. Gray, Supervisor of Building and Loan Associations of the State of Missouri, has this day filed his petition in the circuit court of Buchanan county, in division number 1, in vacation, against the Phœnix Loan Association, of St. Joseph, Missouri, stating that he is the Supervisor of Building and Loan Associations of said State of Missouri, and that respondent is a building and loan association organized and existing under the laws of the State of Missouri, and further states that he has made an examination of the affairs

of said association, and finds that it is no longer able to carry out the object and purposes of its organization, and that by its continuance in business would work injuriously to the stockholders and others interested in said association, and the same having been taken up and considered by the undersigned judge of said court, who finds from the petition and the answer filed herein that the allegations of said petition are true, it is therefore ordered that said building and loan association be dissolved, and the officers, agents, and employees of said association are hereby enjoined from further conducting the business of said association, and from in any manner interfering with its business and its property and effects, and that the court hereby appoints Graham G. Lacy and Harry M. Tootle as receivers to take charge of the property and assets, and to wind up the affairs of said association according to law, and as this court may from time to time order. And it is further ordered that each of said receivers execute a bond or bonds to the State of Missouri, each to aggregate the sum of fifty thousand dollars, to be approved by the judge of this court, before they enter upon the discharge of the duties of their office. And it is further ordered that the said receivers select their own bank in which to deposit the funds of said association as they are collected by them, and said bank is ordered to execute bond to the said State of Missouri in the sum of one hundred thousand dollars, to be approved by the judge of this court, to the use and benefit of all parties interested in assets of said association, for the faithful keeping and accounting of such money and funds as may be deposited in said bank by said receivers from time to time; and said bank is ordered to notify the judge of this court of the daily deposit made in said bank by said receivers. And it is further ordered that the receivers make a complete and accurate inventory of all the assets of said association at the earliest possible time, and G. P. Kincade and

F. A. H. Garlichs are appointed appraisers to appraise the assets of said association; and the court hereby declares all loans owing said association, however evidenced, to be, and they are now, due and payable. It is further ordered that the board of directors of said association forthwith make an order directing the president and secretary of said association to execute proper deeds and conveyances conveying to the receivers herein named all the property, real, personal, and mixed, belonging to said association, and not located in the State of Missouri; and said president and secretary are hereby ordered to forthwith execute said instruments conveying said property to said receivers, and said receivers are hereby ordered to proceed to wind up the affairs of said association as speedily as is consistent with the best interest of the creditors and shareholders of said association. It is further ordered that the receivers hereby appointed employ R. A. Brown as their attorney and counsellor in all matters connected with the management and winding up of the affairs of said association; the compensation of said attorney to be approved by this court. It is further ordered that the receivers employ such clerical assistance as may be necessary in the protection, collection, and preservation of the assets of said association; the compensation of said clerical assistance to be approved by this court.

"A. M. Woodson, Judge.   July 15, 1899."

The receivers so appointed gave their bonds, respectively, as the order required, on July 17 and 19. On August 5 the receivers filed a petition in which they requested instructions in relation to determining the amount due on certain mortgages. On August 30 the receivers and appraisers filed an inventory and appraisement showing assets valued at $434,726.81.

On September 2, A. L. Crawford and fourteen others filed their petition showing that they were stockholders in the corporation and asking to be made parties to the suit. The peti-

tion is elaborate in its statements, averring mismanagement on the part of the officers of the corporation, and that the suit was brought, not in the interest of the stockholders, but by collusion between the relator and the guilty officers, to aid them in covering up their misdeeds, and enable them to profit in the fees and salaries incident to the winding up of the affairs of the corporation.   Special objection was urged against one of the receivers, and his removal was asked. This petition was presented to the judge who had made the order of July 15, and thereupon he ordered the petitioners to be made parties defendants, modified the order of July 15 so as to authorize the receivers to make their own selection of an attorney, and denied the prayer for the removal of the receiver against whom the special objections had been urged.   All of the above-mentioned proceedings were in vacation, before the judge in chambers.

At the September term, 1899, and at subsequent terms, the court, treating the order of July 15, above set out, as the final decree in the case, proceeded to make orders in the way of directions to the receivers to guide them in the administration of the affairs of the supposed defunct corporation, and other orders of an administrative character.   A brief summary of the proceeding is as follows:   On September 21 the court responded to the petition of the receivers filed August 5, above mentioned, and instructed them upon what basis they should settle with borrowing stockholders.   On September 23 a referee was appointed to adjust claims against the concern, and directions given for his conduct.   On September 25 one of the receivers resigned, and another was appointed in his place.   October 3 directions were given the receivers in regard to receiving payments, and authorizing them to release mortgages.   October 23 the stockholders who had been admitted as parties filed their motion for a change of venue, which on No-

Vol 161 mo—29

vember 4 the court overruled; and on the same day they filed their motion to set aside the order appointing a referee, and also a motion to discharge one of the receivers, to reduce expenses. November 6 the stockholders above named filed their bill of exceptions to the action of the court in denying them a change of venue. At the January term, 1900, on January 1, the referee filed his report, showing total stock claims allowed, $522,583.23; total preferred claims allowed, $4,744.61; aggregate, $527,327.84.

On January 2 the intervening stockholders filed their petition, showing that a suit was pending in another division of the same court, wherein George A. Cowden and others, in the names of themselves and all other stockholders who desired to unite, were plaintiffs, and William H. Crawford and others, who composed the board of directors of the corporation, were defendants, seeking to wind up the affairs of the concern, and that a like suit was pending in the United States circuit court for that district, wherein Laura A. Snider and other stockholders were plaintiffs, and the directors were defendants, looking to the same end, and that a suit by certain other stockholders, residents of Iowa, was pending in the United States circuit court in Kansas against the directors for the same purpose, in all of which the validity of the act of the judge in vacation above set out is attacked, and that in the two suits in the Federal courts the Act of March 12, 1897, under which the Supervisor of Building and Loan Associations acted in instituting this suit, is attacked as in violation of the Constitution of the United States. And the prayer of the petition is that the court order the receivers to enter their appearance as parties defendant in those suits, and submit to judgment there. On the same day the intervening stockholders filed objections to an application of the receivers for leave to compromise or settle what is called the "Seelman Debt," for reasons set out, and

also a second motion for a change of venue. In this last application for a change of venue it is alleged that the court had overruled the former motion on the ground that there was then no issue pending in the case, whereas since then these motions had been filed, which were then pending. On January 6 all the pending motions, including the motion for a change of venue, were overruled.

On January 11, the same stockholders filed a petition and bond for removal of the cause to the United States circuit court for that district, on the ground that the controversy was one arising under the Constitution and laws of the United States, in that the stockholders were being deprived of their property and interest in the corporation under the form of the Act of March 12, 1897, which, as construed by the court in that case, was depriving them of their property without due process of law. January 20, Theodore Hoppel and others, stockholders, filed a protest against the removal of the cause to the Federal court, and on the same day the court refused the petition for removal.

On May 9, at the May term, 1900, the first-mentioned intervening stockholders filed a motion to vacate and set aside the order appointing receivers. May 16 the court ordered the receivers to pay all the general debts allowed, in full, and 30 per cent of 80 per cent of the amount of stockholders' claims allowed, and gave them directions in regard to adjustments and equalizations of dividends of stockholders in Kansas and Texas, where suits were pending and receivers had been appointed. On the same day the report of the referee was approved and affirmed.

May 19 the motion of stockholders to vacate the order appointing receivers was overruled, to which order exception was taken, a bill of exceptions filed, and appeal granted to this court.

June 1 the stockholders filed an answer to the original petition in the case, denying its allegations, and also averring that it does not state facts sufficient to warrant the action sought to be taken. That seems to be the last act in the case.

The cause came to this court on the appeal of the stockholders from the order overruling their motion to vacate the order appointing the receivers. Upon that appeal we held that only so much of the record as related to the action of the court in refusing to vacate the order appointing receivers was under review, because it was a special appeal on a particular point, authorized by the Act of April 11, 1895. The views of the court on the point are shown in the opinion in that case. [State ex rel. v. Phœnix Loan Ass'n, 159 Mo. 102.]

The record is now brought to us by the writ of certiorari, and we are still within limits in the matter of review.

In State ex rel. v. Smith, 101 Mo. 174, this court, per SHERWOOD, J., said of the writ of certiorari: "This writ, under constitutional provisions is strictly the common-law writ of that name; it only brings up the record, and can only reach errors or defects which appear on the face of the record of the tribunal to which it is issued, and which are jurisdictional in their nature." [Citing Hannibal & St. Joseph R. Co. v. State Board of Equalization, 64 Mo. 294.] The same doctrine is laid down in Ward v. Board, 135 Mo. 309; and in 4 Enc. Pl. & Prac. p. 90, it is said: "At common law. . . . . . . . . . the function of a writ of certiorari is simply to bring up for review questions affecting the jurisdiction of the inferior tribunal, there being no other adequate remedy." We will not, therefore, in this instance, decide questions that relate only to alleged errors in the rulings of the court, when the subject was within its jurisdiction. When errors of that kind are committed, they can be corrected on appeal or writ of error.

The main question in this case relates to the action of the

judge in vacation making an order in form of a final decree, and designed to have effect as such. If it had been rendered by a court having jurisdiction of the case, it would unquestionably have filled all the requirements of a final decree, and have left nothing to do but to execute the decree by administering the estate. Under our judicial system a judge of a circuit court in vacation has no authority to render a final judgment or decree in any case. By our Constitution the judicial power of the State, as to matters of law and equity, except as in the Constitution itself otherwise provided, is vested in certain courts therein named. [Const., art. 6, sec. 1.] The word "court" is there used in its technical sense. A court is a judicial assembly. The judge of the court is its presiding officer. While the judge is often called the "court," yet he is only so rightly called when the tribunal over which he presides is in session. Bouvier gives to the word "court" this definition: "A body in the government to which the public administration of justice is delegated. The presence of a sufficient number of the members of such a body, regularly convened in an authorized place at an appointed time, engaged in the full and regular performance of its functions."

The Supreme Court of California has said: "A court is a tribunal presided over by one or more judges, for the exercise of such judicial power as has been conferred upon it by law. BLACKSTONE, following COKE, defines it as 'a place where justice is judicially administered.' [3 Bl. Comm. 23.] But it is also essential that this place be designated by law, and that the person or persons authorized to administer justice be at that place for the purpose of administering justice at such times as may be also designated by law........As the judicial business increased, it became impossible to transact it all within those periods of time, and there grew up the practice of hearing matters 'out of court' with the same effect as if heard while

the court was in session.........The motions and orders thus made were said to be heard and disposed of 'at chambers.' ......The distinction between those matters which could be heard in court and those which could be heard at chambers arose from convenience, rather than from any other cause; but they were limited to the subsidiary and incidental steps in practice and procedure, leaving to the court the judicial determination of the issues presented by the pleadings, and which formed a part of the record." [Von Schmidt v. Widber, 99 Cal. 511.]

Our Constitution ordains that "the courts of justice shall be open to every person." [Article 2, sec. 10.] And our statute requires, "The sitting of every court shall be public and every person may freely attend the same." [R. S. 1899, sec. 1597.] The courts have their periods of terms and vacations. The law prescribes when and where a circuit court shall sit, and it can only sit then and there. The statute makes provision in certain emergencies for the holding of special terms upon proclamation at the close of a regular term, or notice as prescribed by law; but, when such special term is held, it is an open session of the court convened as the law prescribes. Our statute confers upon circuit judges the power to perform certain acts in vacation, judicial in their character, among which is the power to appoint a receiver to hold and preserve property, the subject of litigation, until the court can dispose of it. To that extent we upheld the act of the circuit judge in this instance when the cause was here on the former occasion, but our affirmance of the act went no further than the appointment of the receiver to take possession of and hold the property subject to disposal by the court.

It is contended that our statutes confer on the judge the authority to hear and determine the whole issues in a case of this kind in vacation. If there is such a statute, it is in vio-

lation of section 1, article 6, of our Constitution, above quoted. In that section the Constitution disposes of all the judicial power of the state in matters of law and equity, and it leaves nothing to be disposed of by the General Assembly. This is the view the Supreme Court of Michigan took of the same subject. That court said: "By article 6, section 1, of our Constitution, the judicial power is vested in one supreme court, in circuit courts, in probate courts, and in justices of the peace........ Section 2 of this act confers upon the judge in vacation the authority to hear and determine summarily upon the questions of the insolvency of the debtor; the giving or attempting to give preferences; his refusal or neglect to make assignment of his property; and his orders and judgment (if he makes any) are final and conclusive..........A statute which confers such judicial powers upon a circuit judge at chambers is clearly in conflict with article 6, section 1, of the Constitution." [Risser v. Hoyt, 53 Mich. 185.]

What is here said is in reference to judicial power in its strict sense. There are quasi-judicial powers conferred upon quasi-judicial bodies, and powers to do certain acts in vacation, judicial in character, but subsidiary to a suit pending or about to be instituted in court, are conferred on judges of courts; but the power to try issues in a suit at law or in equity, and pronounce judgment or decree upon the facts found or confessed, can be conferred, under our Constitution, only on a fully organized court.

The statute which is relied on as attempting to confer the power on a judge in vacation is section 1393, Revised Statutes 1899, which directs how proceedings to wind up a building association are to be conducted, and which contains this clause: "The jurisdiction of circuit courts and the processes, pleadings and proceedings had in the cases instituted under this act, shall be the same as are now provided by law for the winding up

and dissolution of insurance companies, so far as such provisions of law are applicable." The insurance statute referred to is section 8024 et seq. Those sections do essay to confer such power on the judge in vacation. In section 8026 is this clause: "Nor shall the adjournment of the court for a term work a postponement of proceedings hereunder to the next term, but the same may be had in vacation as well as term time." And there are other expressions in those sections indicating that the court or judge in vacation may sit in judgment. If the validity of that feature of the statute has ever been passed on by this court, our attention has not been drawn to the decision. The provisions of those sections first came into our law through the Act of March 10, 1869, and have been copied without change of language into our revisions ever since; the only material change having been introduced in the revision of 1879, when it was provided that, instead of appointing receivers to wind up the affairs of the corporation, the title of all its property should vest in the Superintendent of Insurance, and he should administer the estate. The Constitution in force in 1869 did not limit the judicial power of the state to the courts named, but included also such other tribunals as the Legislature might create. But, even under the Constitution as it was then, it is doubtful if that provision of the Act of 1869 which attempted to confer such power on a judge in vacation was valid, because, while the Legislature was authorized to establish other tribunals, yet it can not well be said that the Legislature, by conferring this power on a judge in vacation, intended to establish in him, as apart from the circuit court another separate tribunal. That would be a strained interpretation of the statute. Revisions are generally literal copies of original statutes, except when an express amendment has been made, and so it not infrequently occurs that inapt expressions are in that way perpetuated. But the statute under which this suit was filed (sec. 1393,

R. S. 1899), which was first enacted in 1897, does not go to the extent that is claimed for it. While it says that the process, pleadings, and proceedings shall be the same as in the winding up of insurance companies, yet it does not say that the jurisdiction of the circuit judge shall be the same, but on the point of jurisdiction it only says, "The jurisdiction of the circuit court shall be the same as in such cases." So there is not even a statutory authority for the jurisdiction attempted to be exercised in this instance.

When the petition and answer were filed in the clerk's office they gave publicity to a condition of the corporation that was likely to cause a feeling of distrust, and if the learned judge to whom the petition and answer were shown thought that such distrust might, before the court could sit in term, cause action on the part of the stockholders or creditors that would be injurious to the interests of all concerned, he had the authority and it was his duty to appoint a receiver to take possession of the concern and its affairs, and preserve them from attack until the court in due season and in due order, could make a judicial investigation and pass judgment on the case. And, as incident to his right to appoint a receiver or receivers for that purpose, he had the right to require them to qualify by giving bond and security. But that is the extent to which his authority went. So much of the order of July 15, 1899 as "appoints Graham G. Lacy and Harry M. Tootle as receivers to take charge of the property and assets" of the defendant corporation, and as requires them to give bond and security for the faithful performance of their duties, is valid, but all the rest of the order is without authority and void. The receivers had the right under that order to take possession of the assets of the corporation and preserve them. The order was no authority to them to proceed to administer the estate. There has been no

final decree in the case. There has been no adjudication upon the statements contained in the petition.

But what is to be said of the orders made by the court in term directing the administration of the estate? Those orders have all proceeded on the assumption that there had been a final decree dissolving the corporation and vesting the title to all its property in the receivers. The corporation, however, is not dissolved, and it still holds title to all its assets. But when the circuit court assembled at its September term, 1899, it found itself in possession of this corporation's affairs, through the hands of the receivers, and it had complete jurisdiction of the case. It was then for the first time in position to pass judgment on the petition, or upon the petition and answer together. Until such judgment or decree was rendered, neither the corporation nor its officers could be permanently deprived of their property or relieved of their duties. But the court being in possession of the assets, and having jurisdiction of the persons and property, had the right to make such orders as the immediate emergency demanded, to preserve the estate, or to prevent the condition from operating upon it more injuriously than necessary until the court in due season, could hear the case on its merits, and pronounce its judgment. It is for a similar reason that our statute authorizes the court to order the sheriff to sell perishable property seized under attachment before the rightfulness of the attachment has been adjudged. What was necessary to be done in such condition was a question which the court had jurisdiction to determine. If, in the exercise of that jurisdiction, it has done what was unnecessary, it has committed error; but as long as the act done is within limits where it may be reasonably adjudged to have been necessary to preserve the estate until the court could finally adjudicate the rights of the parties, the error is not jurisdictional, and is not within the limits of a writ of certiorari. We will not, there-

fore, decide under this writ, whether the court went too far in some of these administrative orders. We conclude, therefore, that the appointment of the receivers "to take charge of the property and assets" of the corporation, and their qualification by giving bonds and security, were authorized and valid; but in all else the order above set out, of July 15, 1899, was without authority, and should be quashed. It is so ordered. All concur.