COBE, Appellant, v. RICKETTS, Respondent.

St. Louis Court of Appeals, February 7, 1905.

1. JURISDICTION: Conflict of Jurisdictions.  A court, possessing jurisdiction of the subject-matter of an action pending before it, has the right to proceed to a final determination of the controversy as against another tribunal of concurrent jurisdiction in which a similar action was subsequently instituted; and this applies to conflict of jurisdictions between State and federal courts.

2. ———: ———: State and Federal Courts.  In a proceeding in a State court to wind up the business of an insolvent building

and loan association, the State court has jurisdiction to proceed to a final distribution of the assets through its receiver, notwithstanding a suit brought later for the same purpose was pending in the federal court.

3. ———: Collateral Attack: Finding of Jurisdictional Facts. Where a circuit court of the United States, having jurisdiction of the subject-matter of an action, finds the necessary facts to give it jurisdiction in the particular case, its judgment thereon can not be questioned in a collateral attack for want of jurisdiction.

4. ———: ———: ———: Presumption. Where such a court's right to take jurisdiction depended on facts *in pais*, it is presumed, in a collateral proceeding, from the retention of jurisdiction, that the court inquired concerning such facts and adjudicated them, and this is true even though the court finds the facts erroneously and the judgment would have been reversed on appeal.

5. ———: ———: Conflict of Jurisdictions. A federal court, in an action pending before it to wind up the affairs of an insolvent Missouri building and loan association, brought by a foreign stockholder, ordered the sale of the notes belonging to the association and a sale was made in pursuance of such order, which order was never appealed from. A purchaser of one of the notes at such sale brought suit upon the same. *Held*, the defendant, maker of the note, could not defeat recovery for want of jurisdiction in the federal court to order the sale of the note on the ground that a proceeding had been first brought in a State court to have the affairs of the same building and loan association wound up, which proceeding was pending in the State court at the time.

6. JUDGMENT: Order of Sale: Receiver and Master in Chancery. In an action to wind up the affairs of a building and loan association, in which a receiver had been appointed, a special master in chancery was ordered to advertise for bids for the assets and the bid of a purchaser was accepted for all the assets, the special master was directed to convey to the purchaser the assets and for that purpose an order was made vesting the title in him as special master. The decree further provided that any and all notes should be assigned by the receiver. *Held*, in an action by the purchaser on one of the notes that the sale was by the court itself, and not by the special master or the receiver, and a delivery of the note, in pursuance of the sale, ordered and approved by the court, was sufficient to invest plaintiff with title.

Appeal from Audrain Circuit Court.—*Hon. Houston W. Johnson, Judge.*

REVERSED AND REMANDED.

*Fry & Rodgers* for appellant.

(1) The United States Circuit Court had jurisdiction over the subject-matter involved in the suit of Cowden v. Phoenix B. & L. and the parties thereto; the said Cowden being a citizen of the State of Iowa, the defendant being a citizen of the State of Missouri and the amount in dispute exceeding the sum of two thousand dollars. Act of 1887-1888, 24 U. S. Stat. at L. 552, c. 373. secs. 1, 2; 25 U. S. Stat. at L. 443, c. 866, secs. 1, 2. (2) The jurisdiction of the circuit court of the United States being thus established both over the parties to the suit and subject-matter of it; the judgment rendered therein is not open to collateral attack, nor has the State Court the power to review it and say that the Federal Court committed error in rendering it. State ex rel. v. Rainey, 74 Mo. 233; Berneker v. Miller, 44 Mo. 110; Wonderly v. L. Co., 150 Mo. 646, 51 S. W. 745. (3) Jurisdiction of subject-matter is the power to hear and determine cases of the general class to which the proceedings in question belong. The United States Circuit Court had jurisdiction. Hadley v. Bernero, 103 Mo. App. 549, 78 S. W. 64; Postlewaite v. Ghiselins, 97 Mo. 424, 10 S. W. 482; State ex rel. v. Smith, 104 Mo. 422, 16 S. W. 415; Hardware Co. v. Riddle, 84 Mo. App. 278; State ex rel. v. Neville, 110 Mo. 348, 169 S. W. 491; Rosenheim v. Harstock, 90 Mo. 365, 2 S. W. 473; O'Reiley v. Nicholson, 45 Mo. ——; Gray v. Bowles, 74 Mo. 419; Coleman v. Dalton, 71 Mo. App. 25; Musick v. Railroad, 114 Mo. 315, 21 S. W. 491. (4) The trial court was clearly in error in holding if a suit was pending in the State Court of Buchanan county, that, so long as it was

pending, all other courts were without jurisdiction over the persons and subject-matter of such suit. Williams v. Williams, 53 Mo. App. 624; Warder v. Henry, 117 Mo. 542, 23 S. W. 776; Carson-Rand Co. v. Stern, 129 Mo. 388, 31 S. W. 772; 1 Ency. Pl. & Prac., 755.

*Geo. Robertson* for respondent.

GOODE, J.—This is an action on two promissory notes originally executed by the defendant to the Phoenix Loan Association of St. Joseph, Missouri. One note was given September 11, 1894, and one September 9, 1899. At the dates of the notes the said loan association was a going concern. Ricketts was a stockholder and put up, as collateral security for his notes, a certificate of stock for $1,000. On July 15, 1899, H. L. Gray, State supervisor of building and loan associations, began a suit in the circuit court of Buchanan county, alleging said association was insolvent and asking that a receiver be appointed. The association filed an answer admitting the truth of the petition and joining in the prayer for a receiver; so the court appointed Henry M. Tootle and William Graham receivers. On April 2, 1901, while the proceedings for the dissolution of the corporation were pending in the Buchanan Circuit Court, an action was instituted in the circuit court of the United States for the St. Joseph division of the Western District of Missouri. This suit was brought by George A. Cowden, a stockholder in the association and a citizen of Iowa, and asked the appointment of a receiver. The Federal Court assumed jurisdiction and appointed the same receivers previously appointed by the State Court. Thereupon the judge of the Buchanan Circuit Court undertook to transfer the receivership to the Federal Court and relinquish jurisdiction over the property of the association. This attempt was removed to the Supreme Court of Missouri by a writ of cer-

tiorari and the latter court quashed the order transfer-
ing the receivership and property to the Federal Court.
[State ex rel. v. Woodson, 164 Mo. 440, 64 S. W. 774.]
Subsequently Henry Tootle and William Graham re-
signed as receivers of the United States Circuit Court
and Ransom M. Ridge was appointed in their stead.
They acted for the State Court until discharged by a final
judgment, but seem to have done little or nothing after
their resignation in the Federal Court.    Before they re-
signed that court entered a decree directing its special
master in chancery, Geo. T. Sharrit, to transfer the as-
sets of the association to the plaintiff, Ira N. Cobe, who
had bought the assets at a sale by said master in obedi-
ence to a judicial order.    There were other directions
in the order as to how part of the assets should be trans-
ferred to Cobe, which will be noticed below.    The notes
in suit were not assigned by Sharrit, the master, but by
the receiver, Ridge, who indorsed them as follows: "Pay
to the order of Ira M. Cobe, without recourse on me.
R. M. Ridge, receiver of the Phoenix Loan Association of
St. Joseph, Missouri."    After the transfer of the notes
Cobe began this action in the circuit court of Audrain
county.    He was defeated and appealed.

We have given only so much of the history of the
litigation in which the Phoenix Loan Association became
involved as is material to the present controversy.    A
complete *resume* of the various proceedings against it
may be read in the reports of the decisions of the Su-
preme Court, the State receivership suit having been
thrice before that body.    [State ex rel. Gray v. Phoenix
Loan Assn., 159 Mo. 102, 60 S. W. 74; State ex rel. Bal-
lew v. Woodson, 161 Mo. 444, 61 S. W. 252; State ex rel,
Beskett v. Woodson, 164 Mo. 440, 64 S. W. 774.]    Each
of those cases dealt with some phase of the suit in the
Buchanan court for the winding up of the association.
Besides that suit and the Cowden receivership proceed-
ings, suits were instituted in Kansas and Texas for the

purpose of collecting and preserving the assets of the association in those States.

For the respondent it is contended that Cobe acquired no title to the notes in suit as he purchased at a sale made under an order of the United States Circuit Court, which order was void because of the pendency of a prior suit involving the same subject-matter in the Buchanan Circuit Court.    A court possessing jurisdiction of the subject-matter of an action pending before it, enjoys the right to proceed to a final disposition of the controversy as against another tribunal of concurrent jurisdiction in which a similar litigation was instituted subsequently.    [Bank of Bellows Falls v. R. R., 28 Vt. 470; Mason v. Piggett, 11 Ill. 88; Stearns v. Stearns, 16 Mass. 170; Home Ins. Co. v. Howell, 24 N. J. Eq. 239; Sayler v. Simpson, 45 Ohio St. 141; Hawes v. Orr, 10 Bush. 432; Hardeman v. Battersby, 53 Ga. 36; McLean v. Circuit Judge, 52 Mich. 257; Ober v. Gallagher, 93 U. S. 199.]    This rule is necessary in order to prevent conflicts of jurisdiction.    And the rule prevails in settling between a State and a Federal Court, the right to dispose of litigation.    [Sharon v. Terry, 1 L. R. A. 572, 36 Fed. Rep. 337, affirmed 131 U. S. 40; Watson v. Jones, 80 U. S. 13; Walker v. Flint, 7 Fed. 437; Davis v. Life Assn., 11 Fed. 781; Tefft v. Sternburg, 5 L. R. A. 221, 40 Fed. Rep. 2; Judd v. Telegraph Co., 31 Fed. 182; Nellson v. Robinson, 31 Fed. 634; In re Schuyler's Boat Co., 136 N. Y. 169.] The circuit court of Buchanan county had the power to proceed with the case before it for winding up the loan association and distributing the assets through its receivers, notwithstanding the later suit for the same purpose in the national court.    This was directly decided by our Supreme Court in State ex rel. Baskett v. Woodson, 164 Mo. 440, 64 S. W. 774, wherein it was held that the order of the Buchanan Circuit Court to transfer the winding up proceedings to the Federal court and require the receivers to turn over the assets in their hands

to the receivers appointed by the latter tribunal, was a nullity. After that decision the suit in the Buchanan court and the one in the United States Circuit Court appear to have been conducted so that the orders of the two courts would agree in all respects. We gather this from the final judgment of the Buchanan court dissolving the loan association and discharging its receivers. That judgment or decree recites that the receivers, Graham and Tootle, had discharged in full all of the indebtedness of the corporation except to its members and had likewise fully administered the property in their hands, doing all things "under the orders of this court and of the Circuit Court of the United States in and for the Western Division of the Western District of Missouri, by which latter court they were also appointed receivers." The decree further recited that the receivers had fully administered and applied all the assets in their hands as officers of the Buchanan court, that no exceptions had been filed to their final settlement and aplication for discharge and, therefore, their report and settlement were approved and they were discharged, and the cause ordered to pass from the docket of the court. If an appeal was taken from that judgment the fact is not shown, and we accept it as the final disposition of the winding up suit in the Buchanan court. But the Cowden case still progressed. The latter suit contemplated from the first, deference to the prior litigation in the State court. The bill filed in the Federal Court referred to the proceeding in the State Court and stated reasons why the latter court could not as effectively administer all the assets of the loan association as the Federal Court, with an averment that the State Court would order its receivers to turn over the assets in their hands to the receivers appointed by the Federal Court. The latter tribunal appointed the same receivers and recognized the orders of the State Court regarding their compensation and the other expense already incurred. The Buc-

hanan court endeavored to facilitate the Cowden suit by transferring the assets in its custody into the custody of the Federal Court; but, as we have said, was blocked in the attempt by the decision of the Missouri Supreme Court. The foregoing matters are not very relevant to the point we have to decide, but are explanatory of the spirit in which the State and the Federal Court were conducting the proceedings before them. The essential question in this connection is whether the pendency of the suit in the State court deprived the Federal Court of jurisdiction in the Cowden suit so completely that all its orders, including the order for the sale of the notes in controversy to the plaintiff, were void. It is perfectly clear to us that the Federal Court was not without jurisdiction in that sense. The suit before it was between citizens of different States and on the facts stated in the bill it had jurisdiction of the cause. Its jurisdiction to wind up the affairs of the corporation at the instance of a foreign shareholder is unquestionable. That is, it had jurisdiction over the subject-matter of the Cowden suit. Whether it had power to act in the particular case, in view of the pendency of the prior suit, was a proposition for the Federal Court to adjudicate before proceeding. If it decided the proposition erroneously, its judgment could be reversed on appeal, but can not be attacked collaterally. A circuit court of the United States is of restricted but not of inferior jurisdiction. If it has jurisdiction over the subject-matter of a particular cause, that is, power to determine the general question involved, it may proceed with that cause if the requisite facts exist to authorize it to exercise its jurisdiction. One fact often indispensable to an exercise of jurisdiction is that the controversy must be between citizens of different States. A Federal court may find erroneously as to this fact and proceed to judgment when it should not. If it does, its judgment, nevertheless, is exempt from collateral attack on the ground that the fact was non-existent, but may be reversed on appeal

or writ of error for the erroneous decision. Unless thus reversed the matter remains *res judicata*. [McCormick v. Sullivant, 10 Wheat. 107; Ex parte Watkins, 28 U. S. 193; Bank of the United States v. Moss, 47 U. S. 31.] Where a court's right to take jurisdiction depended on facts *in pais* it is presumed, in collateral proceedings, if jurisdiction was retained, that the court itself inquired concerning the facts and adjudicated them. [In re Davidson's Est., 100 Mo. App. 263, 73 S. W. 373; Fisher v. Bassett, 9 Leigh 119; Grignon v. Astor, 43 U. S. 319; Wyatt v. Steele, 26 Ala. 649; Stoddard v. Johnson, 75 Ind. 30.] Even if the court finds wrongly, its judgment, far from being a nullity, is effectual unless set aside in a direct proceeding. This rule is applied in settling the effect of the pendency of a prior action between the same parties about the same subject-matter. No one pleaded the suit against the Phoenix Loan Association in the State Court in abatement of the subsequent suit in the Federal Court, or objected to the latter tribunal's proceeding with the case before it, on the ground that a prior suit of the same character was pending elsewhere. It is true the first suit was referred to in Cowden's bill; but the reference was accompanied with allegations intended to show that, notwithstanding the previous suit, the Federal court had jurisdiction. It exercised that jurisdiction and in so doing found, in effect, that the facts existed to warrant its course; and among other facts that the earlier suit was not in the way. Its finding must be respected in this collateral action. [Gilman v. Perkins, 7 Fed. Rep. 887.] The order of the Federal Court for the sale of the notes in suit, and the sale pursuant to the order are valid as far as defendant's right to challenge them for lack of jurisdiction in the ordering tribunal is concerned.

Another proposition invoked to support the judgment below is that the notes in suit were sold to Cobe, not by the receiver who assigned them, but by Sharrit,

the special master in chancery, in whom title had been vested by the Federal Court; that, therefore, Ridge had no title to assign and plaintiff acquired none by virtue of the assignment. The sale was by neither the master nor the receiver, but by direct action of the court itself. The record before us does not contain the order under which Sharrit acted in connection with the disposition of the loan association's assets; but an interlocutory order of the Federal Court is shown in which we find a recital that Sharrit had been directed on January 16, 1902, as special master, to advertise for bids for the assets. It is further recited that Cobe's bid of $80,000 for the entire assets was the only one submitted. It does not appear that Sharrit was empowered to sell the assets, but merely to advertise for and receive bids; that he received plaintiff's bid and reported it to the court which accepted it. This bid was for the assets as they were at the close of business on November 30, 1901. The court's decree concerning the sale is, in part, as follows:

"That the said bid of Ira M. Cobe of eighty thousand dollars ($80,000) for the entire assets of said association as the same were at the close of the business on the 30th day of November, 1901—excepting cash in the hands of said receivers on that date—be accepted according to the terms and tenor of said bid, and that in accordance with the terms of said bid there shall be and is hereby sold to the said Ira M. Cobe each and all of the property and assets of the Phoenix Loan Association of St. Joseph, Missouri, of every kind and name or nature, legal or equitable, including real and personal property, choses in actions, demands, and every species of property or thing of value belonging to said association of its shareholders, or to which the receivers by virtue of their office are entitled as such receivers— excepting the cash in the hands of said receivers on the said 30th day of November, 1901."

The decree next directed Sharrit, on payment of

the amount of the bid, to execute, acknowledge and deliver to Cobe, or any person designated by him, proper deeds of conveyance in the nature of instruments of quitclaim, transferring all the assets of the Phoenix Loan Association, both real and personal; but with this clause: "excepting the securities mentioned ·hereinafter, which shall be transferred as hereinafter directed." To enable Sharrit to make the transfer the decree proceeded as follows: "For that purpose the title to each and all the assets of said Phoenix Loan Association of every kind, name and nature, is divested out of the defendant association and its said receiver and all other parties to this suit and vested in said George F. Sharrit, as special master, as aforesaid." The latter clause is broad enough to include the notes in controversy; and, indeed, its language embraced every asset of the association. But in the same paragraph certain securities to be mentioned afterwards, were excepted by the clause quoted above. The only securities afterwards mentioned were designated thus: "Any and all of the notes, bonds, mortgages, trust deeds and other securities," and these the receiver was directed "to assign without recourse and deliver to said Cobe." The receiver was further directed to join in any assignment and transfer of the assets, required by Cobe or the special master for the purpose of vesting in Cobe the title to the real estate and other property of the association. The decree further provided "that said Cobe be and he hereby is vested with the beneficial title and interest to each and all of said notes, bonds, choses in action and mortgages and trust deeds included in this sale." That clause immediately follows the one directing the receiver to assign all the bonds and notes to plaintiff without recourse. There is some confusion or inconsistency in the decree; but the fair interpretation of it is that Sharrit, the special master, had been vested with the title to the association's realty and other assets except its commercial paper, and was ordered to transfer to the plaintiff the

title to all the property he held and the receiver was ordered to assign the notes, bonds and other securities. The master was directed to transfer such assets as were vested in him by conveyances of the nature of quitclaim deeds; instruments not likely to be used as a mode of passing title to or ownership of commercial paper. We think the assignment by Ridge, the receiver, was in obedience to the court's order and technically correct; but as the sale was made by the court itself, and not by the special master or the receiver, and as the court's decree vested the title to all the association's securities in Cobe, their delivery to him by either Sharrit or Ridge, made his property in them and right of action on them complete. An assignment by the master or the receiver, was not indispensable, but a formal act operative only as a further assurance. The notes, no matter which officer's hands they were in, were really in the custody of the court to be disposed of for the benefit of all interested parties. The essential fact is that when plaintiff brought this suit they were in his possession as owner by virtue of a sale fully consummated, made and approved by a court of competent jurisdiction. [Mfg. Co. v. Bradley, 106 U. S. 175, 182.] When land is sold pursuant to a chancery decree, the act which vests the purchaser with the beneficial estate is an order confirming the sale. To pass the legal title a conveyance is requisite. [2 Barber, Ch. Prac. (2 Ed.) 531.] But we see no reason why delivery of a personal asset like a promissory note should not be sufficient to pass title if made after the sale is confirmed, if the court does not make some formal act of transfer a prerequisite.

It is said the certified copies of the records of the Federal Court should not have been admitted in evidence, because they were verified by the clerk only, with no certificate from the judge that the clerk's certificate was in due form. That point does not call for decision on this appeal, as the records were admitted on the plaintiff's offer and the exception to the ruling was by

the defendant, who succeeded below. If the plaintiff's attorneys are not satisfied with the attestation of the records it can be strengthened before another trial.

The judgment is reversed and the cause remanded. All concur.