THE STATE EX REL. WILLIAM P. MCDONALD v. OSCAR F. LOLLIS,
County Clerk.—33 S. W. (2d) 98.

Court en Banc, October 21, 1930.

*John D. McNeely, William Morton, Joseph H. Sherwood* and *Lucian J. Eastin* for relator.

*W. J. Boyd* for respondent.

FRANK, J.—Mandamus to compel respondent, County Clerk of Buchanan County, to print the name of relator on the ballots to be submitted to the voters at the general election to be held in November, 1930, as a nominee for the office of Justice of the Peace of Washington Township, Buchanan County, Missouri. The alternative writ issued, to which respondent made return, and relator moved for judgment on the pleadings.

The sufficiency of the pleadings is not challenged and the facts are undisputed. A short statement of the pertinent facts will suffice.

Relator was one of twenty-two candidates on the Democratic ticket at the August, 1930, primary who sought the nomination for Justice of the Peace of Washington Township, Buchanan County, Missouri. Of the twenty-two candidates, but four could be nominated, and by law the nominations went to the four candidates receiving respectively the highest number of votes.

The returns of the primary election, made and canvassed as provided by law, showed that relator was one of the four candidates receiving the highest number of votes, and he received from the proper authorities a certificate of nomination.

Respondent in his return concedes the facts to be as above stated, but alleges, in substance, that J. B. (Jess) Brown, one of the candidates for said office, contested relator's nomination; that said contest was had in accordance with the provisions of Laws of Missouri 1929, pages 194, 196, and resulted in a judgment of the Circuit Court of Buchanan County adjudging that said J. B. (Jess) Brown received at said primary election two votes more than the number received by relator, and ordering respondent as county clerk to correct the records of said election to conform to said judgment; that in obedience to said mandate, respondent, as clerk of said county, did correct the records of the election as commanded by said judgment, and the record as corrected showed that said Brown received two votes more than respondent received, thus making said Brown one of the four candidates receiving the highest number

of· votes. The return alleges that by reason of said judgment, respondent lawfully certified the name of J. B. (Jess) Brown as one of the four nominees for said office, and for the same reason refused and still refuses to certify the name of relator as one of said nominees.

From the statement of facts, it is apparent that the determination of this case depends upon the validity of the contest proceedings.

The first point made by relator is that the statute under which the alleged contest was had is unconstitutional.

In determining relator's contention, it must be kept in mind that the State Constitution is not a grant of power to the Legislature, but is a limitation thereon. The legislative power, subject to the limitations contained in the Constitution, is vested in the General Assembly of the State. [Const., Art. 4, Sec. 1; Harris v. Compton Bond & Mortgage Co., 244 Mo. 664, 149 S. W. 603.] The Legislature may pass any law upon any subject not forbidden by the State or Federal Constitution. [State ex rel. v. Public Service Commission, 270 Mo. 547, 194 S. W. 287.]

There is no limitation in the Constitution which prohibits the Legislature from passing valid laws providing for the contest of primary or nominating elections, and for the opening, examination and recount of the ballots cast thereat. In 1929, the Legislature passed an act providing for the contest of primary elections and a recount of the ballots in the manner provided in said act. [Laws 1929, pp. 194 to 196.] There being no · constitutional inhibition against the Legislature providing for the contest of primary elections, it had full authority to enact a law authorizing such contest, if the provisions of the law, as enacted, do not overstep constitutional limitations.

Section 2 of the 1929 Act, among other things, provides: "Circuit courts and the judges thereof in vacation are hereby vested with jurisdiction and authority to hear and determine contests of primary elections. When a petition shall be filed as provided in the next preceding section, the petitioner shall forthwith present the same to the judge of the court, or if he be sick or absent from his circuit, to the judge of an adjoining circuit, who shall note thereon the date of presentation and for good cause shown at a hearing upon said petition within five days from said date, the court may make an order for a recount of the ballots brought in question by the petition, and shall designate the day when he will hear the same, which shall be in the county of the precincts named not more than five days thereafter."

It will be noted that the act in question invests the judges of circuit courts in vacation, with jurisdiction and authority to hear and determine contests of primary elections. Section 1 of Article 6

of the Constitution provides that the judicial power of the State, as to matters of law and equity, except as otherwise provided in the Constitution, shall be vested in the courts named in said section. A judge of a court in vacation is not a court. It, therefore, logically follows that if the hearing and determination of the contest of a primary election in the manner provided in said act, is the exercise of judicial power, a law which attempts to confer such power on a judge in vacation would be in violation of Section 1 of Article 6 of the Constitution which lodges such power in the courts.

We entertain no doubt but what the hearing and determination of the contest of a primary election in the manner provided in the act in question, is the exercise of judicial power. Said act authorizes circuit courts or the judges thereof in vacation to order a recount of the ballots, order the production of all ballots, poll books, registration books, etc., pass upon the form of the ballot, determine the legality of the ballots and determine the qualifications of the voters whose ballots are in question. The act also provides that the ballot of no person found to be disqualified to vote at said primary election shall be counted.

Section 4 of the act, among other things, provides: "After all questions relating to the form and legality of the ballots and the qualifications of persons voting at said primary election shall have been determined, the persons so appointed shall at once proceed to open, canvass and count said ballots in the presence of the court or judge, and after the count and canvass shall have been completed, they shall tabulate by precincts or voting districts the ballots cast for the contestor and contestee, respectively, and make report in writing to the court or judge of the result of their count and canvass. The court or judge shall thereupon render its judgment based upon the issues of law and fact determined as herein set forth, and cause two certified copies thereof to be transmitted, one to the county clerk of the county or board of election commissioners of the city, and one to the secretary of state of the State of Missouri and said officers shall correct their records to conform to said judgment."

Section 5 of the act provides that "the judgment of the court or judge in the cause shall be final and conclusive, from which there shall be no appeal."

The right to a nomination for public office is a valuable right. The hearing of the contest in the manner provided in said act, and the determination of the rights of the parties thereto, by the rendition of a final judgment from which no appeal lies, characterizes the proceedings as judicial. 15 Ruling Case Law, 569, defines a judgment as follows:

"A judgment is the law's last word in a judicial controversy. It may therefore be defined as the final consideration and deter-

mination of a court of competent jurisdiction upon the matters submitted to it, in an action or proceeding. A more precise definition is that a judgment is the conclusion of the law upon the matters contained in the record, or the application of the law to the pleadings and to the facts, as found by the court or admitted by the parties, or deemed to exist upon their default in a course of judicial proceedings.''

''Under our judicial system a judge of a circuit court in vacation has no authority to render a final judgment or decree in any case.'' [State ex rel. v. Woodson, 161 Mo. 444, 61 S. W. 252.]

The hearing and determination of the contest of a primary election in the manner provided in the act in question, being the exercise of judicial power, that part of the act which attempts to vest a judge in vacation with jurisdiction and authority to exercise such power, is violative of Section 1, Article 6, of the Constitution of the State, which vests the judicial power of the State, as to matters of law and equity, in the courts therein named, except as otherwise provided in the Constitution.

However, respondent contends that it is otherwise provided in the Constitution by Section 8 of Amendment No. 9 adopted by the people at a special election held February 26, 1924.

This amendment reads:

''The trial and determination of contested elections of all public officers, whether state, judicial, municipal or local, except governor and lieutenant-governor, shall be by courts of law, or by one or more of the judges thereof. The General Assembly shall, by general law, designate the court or judge by whom the several classes of election contests shall be tried and regulate the manner of trial and all matters incident thereto. . . .''

Respondent misinterprets the language of this amendment. It is true the amendment provides that the judge of a court of law may hear and determine contested *elections of all public officers*, but this provision furnishes no reason for holding that a judge in vacation may hear and determine a contested *nomination for a public office*. the express language of the amendment limits the authority of the judge of a court to the hearing and determination of *contested elections of public officers*, thereby excluding the idea that the framers of this amendment intended to vest such judge with authority to hear and determine *contested nominations for a public office*. A primary election for the purpose of nominating candidates for public offices, is not the election of public officers; therefore, constitutional authority to the judge of a court to hear and determine contested elections of public officers does not give him authority to hear and determine contested nominations for public offices.

There is no doubt about the authority of the Legislature to provide by law that circuit courts may hear and determine contested

primary elections. The statute in question provides that circuit courts and the judges thereof in vacation may hear and determine such contests. Having reached the conclusion that that part of the statute which attempts to invest the judge of a circuit court in vacation with jurisdiction and authority to determine such contests, is invalid, we are next confronted with the question as to whether the valid and invalid portions of the statute are separable.

The general rule is that the unconstitutionality of a part of a statute does not render the remainder of the statute invalid where enough remains, after discarding the invalid part, to show the legislative intent and to furnish sufficient means to effectuate that intent. In State ex inf. v. Duncan, 265 Mo. 26, 45, 175 S. W. 940, this court said:

"If after cutting out and throwing away the bad parts of a statute, enough remains, which is good, to clearly show the legislative intent, and to furnish sufficient details of a working plan by which that intention may be made effectual, then we ought not as a matter of law to declare the whole statute bad. [Cooley on Con. Lim. (7 Ed.) 247; State ex rel. v. Gordon, 236 Mo. l. c. 171; State ex rel. v. Taylor, 224 Mo. l. c. 474; State v. Bockstruck, 136 Mo. 335.]"

In Cooley's Constitutional Limitations (7 Ed.), page 247, the rule is stated thus:

"If, when the unconstitutional portion is stricken out, that which remains is complete in itself, and capable of being executed in accordance with the apparent legislative intent, wholly independent of that which was rejected, it must be sustained. The difficulty is in determining whether the good and bad parts of the statute are capable of being separated within the meaning of this rule. If a statute attempts to accomplish two or more objects, and is void as to one, it may still be in every respect complete and valid as to the other. But if its purpose is to accomplish a single object only, and some of its provisions are void, the whole must fail unless sufficient remains to effect the object without the aid of the invalid portion. And if they are so mutually connected with and dependent on each other, as conditions, considerations or compensations for each other as to warrant the belief that the Legislature intended them as a whole, and if all could not be carried into effect the Legislature would not pass the residue independently, then if some parts are unconstitutional, all the provisions which are thus made dependent, conditional or connected must fall with them."

The statute here in question not only invests judges of circuit courts in vacation with jurisdiction and authority to hear and determine primary election contests, but provides that any candidate desiring to contest a primary election may present his petition therefor to the judge of the court in which the petition was filed, or in case of his sickness or absence from the circuit, to the judge

of an adjoining circuit. The statute makes it the mandatory duty of the judge to whom the petition is presented to designate the day when he will hear the cause, which shall be not later than five days thereafter. These provisions indicate a clear intent on the part of the Legislature to provide for a speedy contest in order that the successful party's name might appear on the ballot as a candidate at the November election. No doubt the Legislature had in mind that many circuit courts of the State would not be in session between the dates of the primary and the general election, and for that reason provided that judges in vacation might hear and determine such contests in order that candidates at primary elections might contest such election in time to obtain the benefit of such contest, if successful.

The clear intent of the Legislature, as gathered from the terms of the act, was to accomplish a single purpose, namely; to provide for speedy contests of primary elections in order that the successful party's name might appear on the ballot as a candidate at the November election. We interpret the statute as expressing a legislative intent to afford any candidate for nomination to public office, in any county of this State, an opportunity to contest a primary election regardless of whether or not the circuit court of his county is in session. If the invalid portion of the statute which attempts to invest a judge in vacation with authority to hear and determine such contests be disregarded, the remaining portion of the statute would not afford an opportunity to contest a primary election in time for the successful party to obtain the benefit of the contest, unless circuit court happened to be in session. If the invalid portion of the statute be disregarded, the part remaining would not express the intention of the Legislature, and for that reason the whole statute must fall.

The conclusion we have reached renders it unnecessary to determine other complaints made against the contest proceedings.

The alternative writ should be made peremptory. It is so ordered. All concur, except *Walker, J.*, absent, and *Ragland, C. J.*, who dissents in separate opinion.

RAGLAND, C. J. (dissenting).—The holding of the principal opinion that the Act of 1929, providing for contests of primary elections, is unconstitutional is based on the proposition that the statute attempts to confer judicial power on the judges of circuit courts. With that I am unable to agree. The right to a nomination for public office is not a property right; it is not a natural or inherent right of any kind: it is purely political: a right which, generally speaking, lies beyond the scope of judicial power.

Not all powers which are judicial in their nature, as requiring judgment and discretion in their exercise, fall within the category of judicial power under the constitutional classification. [State v. Hathaway, 115 Mo. 36.] A statutory proceeding for contesting a primary election is, strictly speaking, neither an action at law nor a suit in equity. It is a summary proceeding of a political character. A tribunal to determine such a contested election need not be a judicial body, the powers exercised being quasi-political and administrative. [Griffith v. Bonawitz, 73 Neb. 622; City of Dallas v. Dallas Consol. Elec. St. Ry. Co., 148 S. W. (Tex.) 292; Hester v. Bourland, 80 Ark. 145.] Jurisdiction of primary election contests may, therefore, be conferred upon officers, official boards, or even party committees, having no semblance of judicial power. [20 C. J. 120.]

If the form of the phraseology be disregarded, and the intrinsic nature of the acts required to be done by the circuit courts or judges in vacation be looked to, it will be found that the powers conferred upon them by the Act in question are precisely the same as those exercised by boards of election commissioners, boards of registry, election judges and canvassing boards, under statutory authority. The Act contemplates that the work to be done by a judge shall be merely supervisory and corrective of that done by the election officials. His conclusions are merely required to be certified to the Secretary of State and the county clerk: no process of any kind is provided for putting his ''judgment'' into effect.

For the reasons suggested, which for lack of time cannot be elaborated, I am of the opinion that the performance of the duties imposed upon judges by the Act does not call for the exercise of judicial power in the constitutional sense. If a statute can reasonably be so construed as to avoid unconstitutionality, that should be done. I dissent from the conclusions announced by my learned associate.